## A. H. COOPER, ADMINISTRATOR, v. J. H. LEE.

### No. 2798.

1.   **Limitation.**—The statute of limitations will not run in favor of one who holds the title to land in his own name under a resulting trust in favor of another until he repudiates such trust, and notice of such repudiation to the *cestui que trust* is shown.

2.   **Fraud—Attorney and Client—Contract.**—In a purchase by an attorney from his client during the existence of that relation presumptions will be indulged against its validity.   In a contest involving its validity between the parties it is incumbent on the attorney to show affirmatively:   1. Good faith.   2. The absence of undue influence.   3. The payment of a fair price.   4. Knowledge, intention, and freedom of action by the client.   5. That the attorney gave the client full information and disinterested advice.

3.   **Same—Limitation.**—Limitation runs against a suit to rescind a contract consummated in fraud after the expiration of four years, or after the expiration of four years from the time when the the fraud was discovered, or when under the facts as they existed it should have been ascertained.

4.   **Fraud—Attorney and Client.**—While equity holds an attorney to the utmost good faith in making a sale to or purchasing from his client, while that relation exists, and where fraud has been practiced by the attorney limitation is suspended until its discovery, yet the client can not neglect every precaution incident to ownership after a purchase from his attorney.   If he purchases from his attorney relying on his representations, and is defrauded, limitation will run against his cause of action after such lapse of time as would naturally suffice to an owner to ascertain the character of his property, and the truth of the representations on which he purchased.   See opinion for facts illustrating the rule.

APPEAL from Harrison.   Tried below before Hon. F. H. Prendergast, Special District Judge.

The opinion states the case.

*M. R. Geer, A. Pope,* and *M. McKay,* for appellant. — 1.    No action to compel vestiture and divestiture of legal title from one to another will lie without showing some present rights to an interest in the subject matter.

2.    To warrant rescission of an executed contract of the sale of lands there must exist at the time of the contract such fraud perpetrated by the party against whom the rescission is sought, whether intentional or not, or accident, or mutual mistake, as will justify the court in the exercise of an equitable jurisdiction to annul the transaction and restore the parties to their respective positions; and no facts which have their inception after the consummation of the transaction will afford any ground for rescission.    Quinn v. Van Pelt, 56 N. Y., 417; Kinsling v. Shaw, 33 Cal., 435.

3.    A party can not plead ignorance of a fact or state of facts when he has and had for years all the sources and means of information in his own possession, and was in no wise hindered or deterred from using such means of information.

4.    One who seeks to rescind a contract for the sale of land must act promptly after the discovery of the facts which will justify rescission, or after he, by reasonable diligence, could have discovered the same, or he will be barred of his action; and when the petition states all the facts which, if found by the jury, will not warrant a judgment of rescission, it is the province of the court on demurrer to determine the question of laches, reasonable diligence, and prompt action, and deny a recovery on demurrer.    Connoly v. Hammond, 58 Texas, 11; Pome. Eq. Jur., sec. 960, and cases under note 2, p. 490; Miles v. Irvin, 1 McCord, 524.

5.    An action to rescind a contract is not limited by any specific statute, and is therefore barred by the lapse of four years.    Rules 5, 8–16, 47 Texas.

*T. P. Young,* for appellee.—1.    The statute of limitations of four years will run against a cause of action to set aside a deed for fraud from the time when the defrauded party discovered the fraud, or from the time when he might, by the use of reasonable diligence, have discovered the fraud.

2.    Where a party by fraud procures the execution and delivery of a deed by another to him, the fact that third parties, on the faith of the property conveyed, credit such party and he becomes indebted to them in simple contract debts not affecting the land with any character of lien, will not estop the defrauded party from asserting his right to the land in a proceeding to set aside such deed.

3.    A resulting trust may be proved by the declarations of the trustee, and this proof may be made after the death of such trustee.    Johnson v. Deloney, 35 Texas, 42; Layton v. Hall, 25 Texas, 204.

4.    Where an attorney purchases property from his client during the

existence of the relation, the burden is upon the attorney to show that such transaction was fair and honest.    2 Pome. Eq., sec. 960, and authorities cited in note 2, p. 490; Story on Eq., secs. 310, 311; Waterbury v. Laredo, 68 Texas, 577.

HENRY, Associate Justice.—J. H. Lee instituted this suit against John T. Pierce on the 4th day of February, 1887, to recover two tracts of land, one designated in the proceedings as the "Smith place," and lying in Harrison County, and the other as the "Tarrant County land," and lying in Tarrant County.

Plaintiff's pleadings as finally amended substantially charge that about the 2d day of March, 1882, plaintiff, desiring to purchase from the estate of Joshua Smith the "Smith place," requested defendant to act as his agent in making the purchase, and placed in his hands a check on a bank in the city of Marshall for the sum of about eight hundred dollars with which to procure the funds to pay for the land, and that defendant, having procured the money with the check, paid it for the land, taking a deed for it in his own name, bearing date the 1st day of April, 1882, and subsequently duly recorded.

The petition charges that this deed was taken by defendant to himself with the understanding that he would afterwards convey the land to plaintiff; that plaintiff is the father-in-law of defendant and lived in his house as a member of his family at the time the deed was executed and up to the time of bringing this suit; that defendant is an attorney at law, and as such acted in this, as well as in many other matters, for the plaintiff, and on account of these confidental relations plaintiff reposed the utmost confidence in the defendant, and did not think he would refuse to convey the land to him when he was requested to do so, but when he did request it, in the month of December, 1886, plaintiff refused.

Plaintiff further charges that in the month of November, 1881, he was the owner of the "Tarrant County land," and about that date defendant represented to him that it would be greatly for plaintiff's advantage for him to exchange said tract for another tract or tracts owned by defendant, and that plaintiff, influenced by said representations and fully trusting the defendant on account of the confidential relations that existed between them, consented to the exchange, and executed about said date to defendant a deed for said land; that the sole consideration for the sale and conveyance of said land was said other tracts of land which defendant pretended to own, and for which he at the same time executed to plaintiff a deed; that both deeds were prepared by defendant, or under his supervision; that plaintiff, on account of his trust in defendant, did not read the deed to him, and did not know the contents of it when he commenced this suit; that at the time of their execution defendant represented to plaintiff that it would be greatly to the interest of both

parties not to record either of said deeds; that plaintiff did not record his deed, but defendant immediately caused the one to him to be re-corded, and since then has appropriated the rents of the land conveyed by it.

That after defendant executed said deed to plaintiff, he, in the month of May, 1884, requested plaintiff to permit him to see it, knowing that it had not been recorded, and plaintiff returned it to him; that defend-ant has never returned the deed to plaintiff, and plaintiff has no means of ascertaining what land was conveyed by it; that plaintiff did not learn that defendant would refuse to return said deed to him until November, 1886, at which time he refused to deliver it to plaintiff.

Plaintiff charges that defendant had then formed the design of de-frauding him by obtaining from him all of his property without consid-eration, and that he then and there fraudulently represented to plaintiff that he owned the lands which he pretended to give in exchange for plaintiff's land, when in truth and fact he did not own the same.

Plaintiff charges that his memory and eyesight were then impaired by age, and that he does not believe he read the deed from plaintiff and he is unable to state its contents; that when defendant requested plaintiff to allow him to examine said deed he fraudulently represented that he merely wanted to look over it and promised to return it, but in fact his purpose was to get possession of and destroy or suppress it.

Plaintiff charges that he did not learn of defendant's fraudulent de-sign with regard to said land until the —— day of November, 1886, when defendant refused to return the deed, and that he did not learn that de-fendant had no title to the lands that he pretended to give in exchange for said Tarrant County land until long after his refusal to return said deed. Wherefore plaintiff says his cause of action did not accrue until said refusal.

Plaintiff charges that the lands for which defendant's deed to him was given are situated in a distant part of the State, and plaintiff had no ac-cess to the title papers thereof nor to the records of said lands, and being very old and without money he could not by any diligence have discovered the wrong that defendant was meditating. Wherefore he says if he had a cause of action prior to the refusal of defendant to return said deed, the same was fraudulently concealed and could not have been discovered sooner by the use of any degree of diligence.

Plaintiff offered to reconvey to defendant the lands embraced in the deed to him. Plaintiff further averred that it was agreed between him and defendant that Pierce should take the deed to the "Smith place" to himself, and that he should, when subsequently requested, convey the land to plaintiff; that defendant was first requested to make such con-veyance on the —— day of December, 1886; that defendant was then the attorney and counselor in law matters, as well as the son-in-law, of

plaintiff, and he reposed the utmost confidence in him, and he therefore says that his cause of action as to the Smith place did not accrue to him until the repudiation of the trust.

The defendant John T. Pierce died before judgment, leaving a will, which was afterwards duly probated, by which he devised his entire estate to his nieces Richie and Mattie Godbold. He left surviving him his widow Annie E. Pierce, and two minor children, John L. Pierce and Hope Pierce.

A. H. Cooper, the appellant, was appointed administrator with the will annexed of the estate of said John T. Pierce, and as such was made a party defendant. Upon the suggestion of the administrator the widow and two children and the two devisees of the deceased were made defendants.

The widow and the two children of deceased appeared and entered their disclaimers and were dismissed with their costs.

The administrator filed an amended answer, in which he defended as to the two tracts of land separately, designating plaintiff's allegations as to the "Smith place" as the "first count," and those as to the Tarrant County land as the "second count."

To the first count he interposed a general demurrer and special demurrers as follows:

"1.    That it is insufficient, because it fails to show why and for what consideration Pierce accepted the trust, and fails to show any specific or expressed trust reposed in him by Lee to invest the money and funds of the latter in land, with legal title in the name of the former.

"2.    That it affirmatively shows that Pierce was acting only in the capacity of attorney at law for Lee, and that he immediately, upon paying for the land, took the title in his own name, in violation of the relations of client and attorney, and that if Pierce ever promised to reconvey the Smith place to Lee it was long after he had converted the funds to his own use.

"3.    Because it fails to show any reason why Lee invested Pierce with such trust, when he was in every respect competent to act for himself.

"4.    It shows that if Lee ever had a cause of action against Pierce by reason of the premises, such cause of action accrued more than four years before the institution of this suit."

To the second count he interposed a general demurrer and special exceptions as follows:

"1.    Because no facts are set forth sufficient to justify a rescission of the contract of sale.

"2.    Because it contains no allegations of fraud, accident, or mistake sufficient to justify a rescission of the contract.

"3.    Because it does not offer to restore to defendant the condition occupied by Pierce at the date of the transaction.

" 4.   Because it shows that plaintiff willingly entered into the transaction, and accepted Pierce's deed, keeping it for years, and failing to record it at his own peril, wherefore he ought not now to be heard to assert ignorance of the contents of the deed.

" 5.   Because plaintiff's cause of action accrued to him long before the institution of this suit, and he being fully advised of all the facts, did not institute suit to rescind within a reasonable time.

" 6.   It shows that plaintiff's cause of action accrued to him more than four years before he brought suit, and that it is barred by the statute of limitations."

The administrator pleaded a general denial of both counts, and specially to both in substance:   That if Lee ever furnished Pierce with money to buy the "Smith place" or made the exchange of the Tarrant County land, he did so with the fraudulent intent to hinder and delay his creditors, etc., and that by placing said titles in the name of Pierce he gave to him ostensibly the appearance of wealth, and that for years Lee knew Pierce had and was using credit with the public with reference to such property, and that he was contracting debts upon the faith of his solvency apparent from the ownership of this land and other property, and that if this property is taken from the estate of Pierce it will be wholly insolvent, wherefore Lee ought to be estopped, etc.

The court properly sustained exceptions to this defense.

No evidence was offered sustaining the issue of insolvency and purpose of defrauding creditors in making the conveyance, and the record does not bring that issue before us for decision in any manner.

The devisees under the will of Pierce appeared and adopted the pleadings of the administrator.   The court overruled all of defendant's exceptions to plaintiff's pleadings.

There was a verdict and a judgment for plaintiff for the recovery of both tracts of land.

We think plaintiff's pleadings show a good equitable title to the Smith place, unaffected by the statute of limitations, and all exceptions to that count were properly overruled.

With regard to that issue the court charged the jury as follows:   "If you believe from the evidence that the money used by Pierce to purchase the Smith place was the money of John H. Lee, and that at the time Pierce purchased it he knew that Lee desired it purchased for himself, then in law Pierce and his administrator holds it in trust for Lee, and you will find for plaintiff as to the Smith place.   Unless you find one or the other state of facts to exist, you will find for the defendant as to the Smith place.   The burden is on the plaintiff to show such facts as will entitle him to recover under the charges given—that is, the deed to Pierce puts the title in him; and Lee must show the facts entitling him to the land before he can recover."

We think this charge presented the issue fully and correctly, and that no error was committed in the admission of evidence affecting it. We think, too, that the evidence sustains the verdict of the jury upon this branch of the case.

No question seems to have been raised on the introduction of the evidence as to a variance between the evidence introduced to prove that the money used by Pierce to pay for the Smith place belonged to plaintiff and the allegation in the petition that the money was procured by collecting a check given him by plaintiff for that purpose.

Upon the issue with regard to the Tarrant County land the court charged as follows:

"If from the evidence you believe that at the time Lee deeded the Tarrant County land to Pierce he was the attorney and general adviser in law matters of J. H. Lee, and the transaction was not fair and honest on the part of Pierce, and that Lee relied on him for advice in the matter, and that Lee did not receive a fair and adequate consideration for the land he then conveyed to Pierce, then you will find for plaintiff as to the Tarrant County land; and in this connection you are to consider just whether or not Pierce was the attorney and legal adviser of Lee. If you find he was Lee's legal adviser, and that Lee looked to him for advice in his law matters and business matters, then the burden is on the defendant to show that the trade for the Tarrant County land was fair, and that the consideration paid by Pierce for the land was adequate.

"If you find from the evidence that the consideration given by Pierce to Lee for the Tarrant County land was a fair and adequate consideration at the time the trade was made, then the fact that Pierce was Lee's attorney and adviser would not entitle Lee to have the sale set aside.

"There is no question of limitation in this case.

"If you find from the evidence that at the time of the conveyance of the Tarrant County land Pierce was not the attorney and legal adviser of Lee, then the burden is on Lee to show that the trade was not fairly made, and that he did not receive adequate consideration for said land, and that he was induced by Pierce to make the transfer for the purpose of depriving him of his property."

No evidence was introduced by either party showing or tending to show either the condition of the title or the quality, quantity, or value of the land conveyed by Pierce to Lee in exchange for the Tarrant County land.

The evidence shows that Pierce was Lee's son-in-law, and that Lee lived from the date of the deeds in 1881 until he brought this suit with the family of Pierce, and that Pierce was a practicing lawyer, and was the attorney and legal adviser of Lee.

Except in so far as concerns the statute of limitations we approve this charge in its application to the facts of this case.

In Pomeroy's Equity Jurisprudence it is said: "The presumption al-

ways arises against the validity of a purchase or sale between the client and attorney made during the existence of the relation. The attorney must remove that presumption by showing affirmatively the most perfect good faith, the absence of undue influence, a fair price, knowledge, intention, and freedom of action by the client, and also that he gave his client full information and disinterested advice." Vol. 2, p. 489.

Judge Story says: "The situation of an attorney or solicitor puts it in his power to avail himself not only of the necessities of his client, but of his good nature, liberality, and credulity, to obtain undue advantages, bargains, and gratuities. The law does not so much consider the bearing or hardship of its doctrine upon particular cases as it does the importance of preventing a general public mischief which may be brought about by means secret and inaccessible to judicial scrutiny from the dangerous influences arising from the confidential relations of the parties.

"By establishing the principle that while the relation of client and attorney subsists in its full vigor the latter shall derive no benefit to himself from the contracts or bounty or other negotiations of the former, it supersedes the necessity of any inquiry into the particular means, extent, and exertion of influence in a given case—a task often difficult and ill supported by evidence which can be drawn from any satisfactory sources. The doctrine is not necessarily limited to cases where the contract or other transaction respects the rights of property in controversy in the particular suit in respect to which the attorney or solicitor is advising or acting for his client; but it may extend to other contracts and transactions disconnected therefrom, or at least where from the attendant circumstances there is reason to presume that the attorney and solicitor possessed some marked influence, ascendency, or other advantage over his client in respect to them.

"On the one hand it is not necessary to establish that there has been fraud or imposition on the client, and on the other hand it is not necessarily void throughout *ipso facto*. But the burden of establishing its perfect fairness, adequacy, and equity is thrown upon the attorney upon the general rule that he who bargains in a matter of advantage with a person placing a confidence in him is bound to show that a reasonable use has been made of that confidence; a rule applying equally to all persons standing in confidential relations with each other. If no such proof is established courts of equity treat the case as one of constructive fraud." 2 Story's Eq., secs. 310, 311; Kesling v. Shaw, 33 Cal., 475; Roman v. Neale, 42 Md., 514.

If the transaction was fraudulent, Lee had a cause of action for its rescission growing out of the transaction itself, and four years is the period prescribed by our statute within which such action shall be brought.

It is a well established rule in this State that fraud will prevent the running of the statute of limitations until it is discovered, or until by the

use of reasonable diligence it might have been discovered. Kennedy v. Baker, 59 Texas, 160.

In the case of Bremond v. McLean, 45 Texas, 19, it is said: "If the want of such knowledge will prevent the running of the statute, it is not sufficient for the plaintiff to assert merely the conclusion that he could not have discovered that the representations made him were false by the use of reasonable diligence, but he must state the facts upon which he relies, that the court may see whether they justify and support such conclusion."

In the case of Kuhlman v. Baker, 50 Texas, 636, the petition charged that plaintiff could neither read nor write, and was in the habit of going to defendant for advice; that defendant, knowing plaintiff had confidence in his representations, and for the express purpose of defrauding plaintiff, falsely represented that he was the owner of the land, and promised that he would make plaintiff a good title thereto, and .that plaintiff was. thereby induced to buy and pay for the land, taking from the defendant and carrying home what he believed to be a deed with warranty, but it proved to be only a quit claim deed. The petition also alleged that plaintiff had been evicted by suit, and that he did not discover that his deed was a mere quit claim until, on being sued for the land, he consulted counsel, and further charged that he could not by reasonable diligence have sooner made the discovery.

Justice Gould, delivering the opinion of the court, said: "The established rule in this court is that fraud will only prevent the running of the statute until the fraud is discovered, or by the use of reasonable diligence might have been discovered. Our opinion is, that if the alleged fraud constituted a sufficient reason why the plaintiff did not at the time the deed was made discover that it was a quit claim, his subsequent failure to inform himself as to the contents of his deed in so material a point was chargeable to his own neglect of ordinary precaution. There is no allegation of any act or representation of defendant subsequent to the deed tending to prevent its examination, nor does it sufficiently appear that the alleged confidential relation of the parties continued until the discovery."

While we are not prepared to say that the relation of attorney and client which, existing between Pierce and Lee, justified Lee in relying upon the representations of Pierce so as to absolve him from the necessity of making any investigations before the transaction was completed would immediately cease to protect him upon the completion of the transaction, so as to require him at once to make inquiries to ascertain the truth of the representations upon which he had acted, we still do not on the other hand believe that the continued existence of the relation justified him in neglecting every precaution that a prudent man would exercise about his property.

Notwithstanding the land was conveyed to him by his attorney, in whom he placed unlimited confidence, ordinary prudence dictated to him as a man of common sense to take advantage of the two years that the deeds were in his possession to learn from them what land had been conveyed to him, where it was situated, something about the condition of the title shown by the records, and something about its value, too. No confidence in his attorney relieved him from the duty of having his land assessed for taxes, and he could not do that without some knowledge of its situation and value. However good the title conveyed him, and however valuable the land was, it was subject to depredations and liable to be lost by limitation unless some attention to it was paid by the owner. We think it an unreasonable application of the rule that protects a client in his dealings with his attorney to hold that at the risk of the attorney the client may neglect every precaution of ownership.

The same confidence that justifies the client when making a trade with his attorney in relying upon his assurances will no doubt entitle him to some reasonable time to ascertain such facts as usually come to the knowledge of owners about their own property, and until such reasonable time has intervened we do not think the statute of limitations should be held to have commenced running against the cause of action.

The petition alleges that the trade with regard to the Tarrant County land was made in November, 1881. More than six years elapsed between that date and the commencement of this suit. Plaintiff may be allowed more than two years from the date of the transaction to ascertain such facts as it was his interest to learn, without regard to his confidential relations to other people, and still have more than four years left before he filed his suit. Conceding his right to a reasonable allowance of time growing out of the circumstances under which he made the trade, before Lee could be required to begin, we think it would be an unreasonable application of the rule to allow him as much time as is required to relieve him from the effect of the statute of limitations in this case.

While plaintiff's pleadings contain allegations that the relation of attorney and client existed between him and Pierce in 1881 and 1882, and again in 1886, we do not find any allegation that the relation existed also during the intervening years, and if it did not there was nothing, of course, growing out of the relation to excuse him from the exercise of diligence during these years.

We think the pleadings of plaintiff show that after allowing him a reasonable time to begin the exercise of diligence to discover the fraud that was practiced upon him to procure from him a conveyance of the Tarrant County land, if he had exercised diligence from the expiration of such allowance, he would have discovered the fraud more than four years before he filed his suit, and that the court committed error in overruling the exception that set up the defense of four years limitation and

also in its charge on the same subject, for which the judgment must be reversed.

We find in the record quite a number of assignments of error not made in conformity to our rules. The appellee called our attention to them by a motion to strike them out. As the decision of the motion involved an examination of the record, we postponed it until the cause should be decided. Our opinion is that the motion should be sustained in so much as it relates to assignments of error for the admission and rejection of evidence and the refusal to give charges asked by defendant, and said assignments would not be considered for the purpose of reversing the cause; but as we have concluded to reverse the cause on a ground properly assigned, and as the same questions about the introduction or rejection of evidence may come up on another trial, we have considered all of the evidence and all of the bills of exception relating to evidence,.and conclude that no error was committed, either in the admission or rejection of evidence.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Delivered November 15, 1889.