TEXAS CENT. R. CO. v. HAWKINS.

(Court of Civil Appeals of Texas. Ft. Worth. Dec. 13, 1913. Rehearing Denied Jan. 31, 1914.)

1. LIMITATION OF ACTIONS (§ 31*)—PERSONAL INJURY ACTION.

The two-year statute of limitations was applicable where the gist of the action was for damages for personal injuries, and the case was submitted on that theory, though the petition also alleged that a settlement made with defendant was procured by fraud, and asked that it be set aside; such allegations having merely anticipated that defense, and not making the four-year limitations applicable.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 142; Dec. Dig. § 31.*]

2. LIMITATION OF ACTIONS (§ 55*)—TIME OF RUNNING—PERSONAL INJURIES.

The two-year limitations began to run against an action for damages for personal injuries from the date of plaintiff's injuries, or at least from the time he had a third stroke of paralysis resulting from the injuries, when he discovered that the representations made to him by defendant that he had completely recovered were not true.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 299–306; Dec. Dig. § 55.*]

Conner, C. J., dissenting.

Appeal from District Court, Erath County; W. J. Oxford, Judge.

Action by A. G. Hawkins against the Texas Central Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed, and judgment rendered for defendant.

J. C. George, of Brownsville, Spell & Sanford, of Waco, and Marshall Ferguson, of Stephenville, for appellant. Hamilton & Kibler, of Waco, and J. B. Keith, of Stephenville, for appellee.

DUNKLIN, J. The Texas Central Railroad Company, defendant in the trial court, has appealed from a judgment rendered in favor of A. G. Hawkins, plaintiff, for the sum of $8,000, as damages for a personal injury sustained by the plaintiff while he was performing the duties of conductor of one of defendant's passenger trains.

Briefly stated, plaintiff's injury occurred in the following manner: At the station Clairette, where the train upon which plaintiff was employed stopped, it became necessary for plaintiff, in the discharge of his duties, to leave the train and go forward on foot, and, after he had signaled his train to start again, and while the same was in motion, he attempted to board it, when his foot came in contact with a stone lying between defendant's main line and siding, and near the track upon which the train was running, thereby causing the plaintiff to

stumble and fall upon the track between the coaches. In falling his head was injured by striking the rail, and in extricating himself he received other injuries to his back by coming in contact with a bolt of iron which projected from one of the coaches. The accident happened during the night, and, on account of the darkness, plaintiff did not observe the stone until after he had stumbled upon it; and it was charged in the petition that defendant was guilty of negligence in permitting the stone to be at that place. The accident occurred on September 14, 1906. For approximately two months after the accident plaintiff was unable to do any work; but on the 26th day of November, 1906, he settled with the defendant his claim for damages for such injury, receiving as a consideration for such settlement the sum of $322.55, and shortly thereafter resumed his duties as a conductor.

In his petition plaintiff alleged the compromise and settlement, but sought to have the same annulled, upon the ground that he was induced to make it upon the representations made to him by defendant's claim agent, R. M. Cox, and by Dr. W. C. Jones, defendant's chief surgeon, in whom plaintiff had confidence, "that he had entirely recovered from said injury, that said injuries had been trivial, and were not of a permanent nature, that plaintiff was sound and well, and that said injuries would not in any way interfere in the future with his pursuing his avocation as railroad conductor or trainman." It was further alleged that the representations so made were untrue, and known by Cox and Jones to be untrue at the time they were made, and were made for the purpose of inducing plaintiff to execute said contract of settlement. It was further alleged that, after he had resumed his duties of conductor, and had worked 11 months, he sustained a stroke of paralysis as the result of his injuries, and on account of his physical and nervous condition at the end of that period he accepted the position of station agent at the town of Dublin, in which position he served for about 18 months. At the termination of the latter period he again resumed his duties as passenger conductor, and continued in that employment until November 22, 1911, when he was discharged on account of his physical inability to perform the duties of conductor. It was further alleged that he had two other strokes of paralysis following the one first above mentioned, and that the injuries he sustained in the accident were permanent, and had incapacitated him, and will for the remainder of his life incapacitate him, for pursuing his avocation of train conductor, or railroad man, or any other character of manual labor. The petition contains this further allegation: "That, had the plaintiff known his true condition at the time said settlement was made, and had he known that he would never recover from said injuries, nor be able to perform the duties of passenger conductor, plaintiff would not have made said settlement, nor executed said release. That the amount paid the plaintiff in settlement for said injuries was wholly and grossly inadequate to compensate him for the damages he has sustained by reason of said injuries. That the plaintiff, fully relying upon the representations of the defendant so made to him, as hereinbefore set forth, did not know that said injuries would incapacitate him to perform the duties of passenger conductor until the said 22d day of October, 1911, when he was advised by the defendant's general manager that he was physically unable to perform such duties." The petition concludes with the following prayer: "Wherefore, premises considered (the defendant having already answered herein), plaintiff prays that said release so executed by him be set aside and held for naught, and that he have judgment over against the defendant for his said damages in the sum of $60,250; that the sum so paid by defendant to plaintiff at the time said release was executed be deducted from whatever amount plaintiff recovers herein, and for all other and further relief to which plaintiff may show himself entitled, either at law or in equity, and in duty bound will ever pray."

The release so executed by the plaintiff is as follows:

Accounts Payable.

Texas Central Railroad Company to A. G. Hawkins, Date of voucher made, Nov. 26, 1906. Waco, Texas.

| Date liabilities incurred. | In full and final settlement for any and all claims of every nature account personal injuries received at Clairette, Sept. 14th, 1906, as per papers in P I File 456, including expenses, doctor's bills, etc. | $322.55 |
| --- | --- | --- |
| Examined and approved. R. M. Cox, Supt. | Examined and audited. S. H. McCartney, Auditor. | Approved for payment. C. Hamilton, V. P. & Genl. Mgr. |

Received ——, 190-, of the Texas Central Railroad Company, three hundred and twenty-two & 55¢ —— dollars, in full, for the above account.

A. G. Hawkins.

Witness: R. M. Cox. Witness: H. O. Whatley.

$322.55.

A Release in Full.

In consideration of the sum of $322.55 dollars, this day paid to me by Texas Central R. R. Co., I hereby *release* said Texas Cent. R. R. Co. from all claims, demands, and causes of action which may have accrued or may hereafter accrue to me for all damages of every nature whatsoever received in and resulting from an accident near Clairette, Texas, on the 14th day of September, 1906, in which I was injured in this manner and effect: Back and side bruised; back of head cut and bruised. Said sum is accepted by me in *settlement* for all damages, injuries, and disabilities which may *hereafter result* from said accident, as well as for those now known to have been caused thereby. It is expressly agreed and understood and agreed that said sum is paid and accepted, *not only* for time and wages lost, expenses incurred, and property damaged and destroyed, but *also in full* and *final settlement* of all claims of *every* nature caused by

said accident. To secure this settlement and the payment of said sum, I hereby represent to said company that I am twenty-one years of age, and that I *rely wholly* upon my own judgment, belief, and knowledge of the nature, extent, and duration of said injuries, disabilities, and damages, and that no representations or statement about them made by said company's surgeons or agents have influenced me in making nor induced me to make this settlement. *No promise of employment nor other agreement not herein expressed has been made by said company, nor by any of its agents or other employés.*

Witness my hand at Waco, Texas, this the 26th day of November, 1906. A. G. Hawkins.

Witness: R. M. Cox.
H. O. Whatley.

State of Texas, County of McLennan.

Before me, the undersigned authority, in and for said state and county, on this day personally appeared A. G. Hawkins, known to me to be the person whose name is subscribed to the foregoing instrument, and, being duly sworn on oath, states that he executed the same for the purposes and consideration therein expressed, that he has read it, fully understands its meaning and effect, knows that it is an unconditional release in full, and that he voluntarily executed it as such.

Given under my hand and seal of office this the 26th day of November, 1906.

[Seal.] H. O. Whatley,
Notary Public in and for McLennan County, Texas.

The court instructed the jury as follows:

"(5) Upon the issue of release, you are instructed, gentlemen, that, if you believe from the evidence that, at and prior to the time the defendant executed the release exhibited in evidence, R. M. Cox, who was acting as claim agent for defendant, and Dr. W. C. Jones, the defendant's chief surgeon, or either of them, represented to the plaintiff that he had recovered, and that his said injuries were not of serious or permanent nature, and that plaintiff was sound and well, and that said injuries would not interfere in the future with his pursuing his avocation as railroad conductor or trainman, and if you further believe from the evidence that said Cox and Jones, or either of them, made such representations for the purpose of inducing the plaintiff to execute said release, and that the plaintiff relied upon said representations, and was induced thereby to execute such release, and if you further believe that such representations, if any, made by the said Cox and Jones, or either of them, were in fact untrue, and if you further believe that the sum paid plaintiff in said settlement as the consideration for said release and acquittance was grossly inadequate to compensate plaintiff for the injuries sustained by him, if you believe he was injured as alleged by the plaintiff, then in such event, if you so find, said release would not be binding upon the plaintiff.

"(6) On the other hand, if you should believe from the evidence in this case that R. M. Cox nor Dr. Jones, and neither of them, made representations to the plaintiff in regard to his physical condition which were untrue to induce him to sign said release, if plaintiff did not believe nor rely on said representations, if any were made, and if you further believe from the evidence that he signed the same freely and voluntary, without any misrepresentation on the part of either of said men which induced him to do so, then he cannot recover in this case, and this although you may believe from the evidence that the sum paid him for said release was grossly inadequate."

By the first assignment of error, appellant insists that it was shown by uncontroverted evidence that plaintiff's cause of action was barred by the two-year statute of limitation, which statute was pleaded by the defendant, and that the court erred in refusing a requested peremptory instruction in defendant's favor for that reason. The trial court applied the two-year statute of limitation by instructing the jury that a verdict should be returned in defendant's favor, if they should find that the suit was not instituted within two years from the time plaintiff knew, or by the exercise of reasonable diligence could have known, the nature and extent of his injuries. The suit was instituted January 2, 1912, while, as noted already, the injuries occurred September 14, 1906, and plaintiff alleged in his petition that he did not discover the nature and extent of his injuries until November 22, 1911. Appellee insists that, the four-year statute of limitation being the only statute applicable to a suit to set aside a contract procured by fraud, and as he sought in his original petition to cancel the release, the four-year statute would be the only statute of limitation applicable. To more definitely understand his contention, we quote the following from his brief: "The thing which appellee parted with in this case was his cause of action. It should be restored upon cancellation of the release unimpaired, and would of necessity be governed by the same period of limitation as is the action to annul. We submit that the action to annul and the value of said cause of action would be ascertained and tried under the same allegations that were made in the case at bar."

We are unable to concur in this contention. Appellee has cited the cases of McCord v. Nabours, 101 Tex. 494, 109 S. W. 913, 111 S. W. 144, Cooper v. Lee, 75 Tex. 114, 12 S. W. 483, Evans v. Goggan, 5 Tex. Civ. App. 129, 23 S. W. 854, Railway v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39, and other decisions of our Courts of Civil Appeals, none of which, in our opinion, sustain his proposition.

The language used in the opinion in the case of Evans v. Goggan, supra, is especially urged by appellee in support of his contention. In that case the plaintiff sought to cancel a written contract executed by him for the purchase of a piano, and for the recovery of the amount paid by him in part consideration for the sale. It was alleged that the contract was procured by fraudulent representations made by the dealer. The judgment was reversed, because the

court applied the statute of two-year limitation to the plaintiff's cause of action for the money paid on the contract, and used the following language: "The suit was for rescission of the contract, and upon judgment of that character the consequences of rescission would follow. The question was: When would the right to a rescission be barred? The statute does not specifically provide for it but provides that every other personal action 'for which no limitation is otherwise prescribed shall be brought within four years next after the right to bring the same shall have accrued, and not afterward.' Rev. St. 1879, art. 3207. It has been decided that the statute of four years applies to an action for rescission of a contract consummated in fraud. Cooper v. Lee, 75 Tex. 114, 12 S. W. 483. If, then, the plaintiff is entitled to a rescission, and is not barred by limitation in that action, he would be entitled to complete restoration of his rights upon rescission. The amount paid on the contract should be restored to him, and its recovery would not be governed by a different period of limitation from that which would govern the action itself. The two-year statute, as for debt, or open account, or money had and received, would not apply." In that case, however, the gist of the action was for damages for fraud and deceit, and the amount of money paid in part consideration for the piano was but the measure of damages in part to be applied in the event the allegations of fraud and deceit were established. In other words, there was but a single cause of action.

The case of Railway v. Titterington, supra, was a suit to cancel a deed for right of way to a railroad company on the ground of fraud practiced in the procurement of that instrument, and in that case our Supreme Court said: "The deed not being void, it would seem to follow that the suit should not be considered as an action to recover land. Prima facie the deed conveys title to the land, and the title remains in the grantee, unless the deed is set aside for fraud or other adequate cause for avoiding the contract. We think that the primary purpose of the present suit is to cancel the deed upon the ground of fraud, and, though a judgment for the land itself is asked, still, if this prayer should be granted, it would be rather as a result of the other relief, which must first be granted, than as the purpose for which the suit was brought. The land could not be recovered without first attacking directly and annulling the deed for fraud. That was the main purpose of the suit, and fixes the character of the action. The action is personal, and is entirely predicated upon the right to vacate the deed." In this case, as in Evans v. Goggan, there was but one cause of action, and the recovery of the land was an incident which necessarily followed from a cancellation of the deed, and no additional evidence or pleading was necessary to recover the land.

[1] The gist of the present case is for damages for the injuries the appellee sustained in the accident noted, and upon that he recovered, as shown by the charge of the court upon the measure of damages, notwithstanding the fact that, in order to enable him to recover, the jury determined that the contract of settlement was procured by fraud, and should therefore be annulled. The allegations in plaintiff's petition that the settlement was procured by fraud, and should therefore be set aside, was but an effort to anticipate that defense to the action for the injuries, and we can perceive no difference in thus anticipating the defense in his original petition, and in alleging the same matters in a supplemental petition in reply to a plea by the defendant setting up said release as a defense to the action for the injuries. After plaintiff offered the evidence upon which he relied to set aside the release, he still had the burden of establishing his cause of action for damages for the personal injuries he had sustained in the accident occurring before the settlement was made, which was a cause of action separate, and distinct, and independent of the grounds upon which he relied to set aside his release. It involved the issue of liability upon the part of the railroad company of contributory negligence and all the issues incident to a suit of that character. After the compromise, in order to recover, plaintiff had the added burden to set aside the release, and this is the only difference between the suit instituted and that which would have been instituted if the release had not been executed.

Plaintiff testified that he had a light stroke of paralysis in 1907 another stroke in March, 1908, and a third stroke in October, 1908. He further testified as follows: "Just a few days before this settlement I met Dr. Jones in Walnut Springs, and I think Mr. R. M. Cox was there too. I think we were at the depot. And Dr. Jones informed Mr. Cox and myself that I had been getting along nicely, and ready to resume work, and his opinion was I would be sound and well as ever was in my life. Mr. Cox told me there, if I would come over to the office the following day, he would be there, and we would have some kind of a settlement. So I went over there, and he said, 'You understand what the doctor said; he said you are going to get along all right.' And said, 'If you are ready to settle, I am ready.' And we made settlement. Neither Mr. Jones or Mr. Cox said anything about my ailment interfering with my services as conductor. They both seemed to think I had fully recovered. That was the impression I had. That is the way I understood Dr. Jones to say, that I was entirely well, and had recovered from the injury. I think I had known Mr. Cox and Dr.

Jones since 1883. My relation with them had been agreeable and friendly. Mr. Cox was superintendent and claim agent at that time. Dr. Jones at that time was chief surgeon of the Texas Central. I had the utmost confidence in them. I believed these representations they made to me. These statements induced me to make the settlement. Had I known at the time that my injuries were permanent, and would in a few years incapacitate me to serve in my duties, I would not have made it for the amount of money. November 23, 1911, was the first time I ever had any knowledge of the facts that I would be physically unable to perform the duties of a conductor or trainman. * * * I didn't know at the time of my injury the extent of it. I knew that paralysis was usually permanent. When I had the second attack in 1908 I was more apprehensive that it was permanent. When I had the third stroke in I never did get over that. I knew then I was permanently injured." After testifying that he recovered from the first two strokes, he testified: "I had the worst stroke in October or November, 1908. I never have gotten over that one, and I don't think I ever will. * * * Since I got this injury in my back and head I don't believe I have ever gotten a solid night's sleep. * * * I never did get well. My back kept hurting. Kept hurting right on every time I would stoop or try to lift anything, or try to chop, or jerk a horse, or anything that way. It kept hurting me until the stroke of paralysis. And after I had the first stroke it just kept hurting until I had the second one, and I knew it was still hurting and believed it was hurting from that injury. I had no doubt of it. When this paralysis came I thought that was on account of this hurt. When the first stroke came I so thought, and when the second stroke came I still thought that was the cause, and I kept on until the third stroke, and I still thought that was the cause. And when Dr. Bailey was rubbing me, and when he was dragging my foot, and the condition of my arm not like the other, I thought that was caused from the lick in the back. I never had attributed the injury to anything but that lick in the back. And I thought all along the injury I was suffering from was caused by this trouble."

Dr. G. F. Bailey, witness for plaintiff, testified that he began treating Hawkins December 1, 1908, and that his treatment extended to the 26th of the same month. He testified: "I treated him for a form of paralysis, difficulty in his stride or walk, and also in his articulation. He had rather a stiffness in the muscles of his back and limbs so as to interfere with his walking, a stiffness of the muscles. At the time he seemed to me he was incapacitated for almost any service, because he could not walk only a short distance without great effort, and it seemed to tire him quite a good deal, and his speech seemed to be very much interfered with; seemed to be labored. His condition was as I have stated when I commenced treating him, but he seemed to improve by the treatment; that is, he could walk better, articulate better. * * * I found evidence of an injury to Hawkins. I found an injury in the lower part of the spine, known as the lumbar region, and also one in the upper part of the spine, known as the cervical region, with a very decided muscular contraction of the deep spinal muscles. His condition as I found it was attributed by me to the injuries that I found—it is my opinion that the conditions I found were due to the injuries mentioned."

[2] The statute of two-year limitation began from the date of appellee's injuries, September 14, 1906. Conceding that he was induced to execute the release upon fraudulent representations made by appellant's agents, in effect, that he had recovered from his injuries, it is quite evident that at all events when he had the third stroke of paralysis in October, 1908, he then discovered that the representations so made to him, and which induced him to execute the release, were untrue. To say the least, the statute of limitation again began to run at that time, and more than two years elapsed from that time up to the date of the institution of the suit, which was January 2, 1912. It thus appears from plaintiff's own testimony that his cause of action was barred by the statute of limitations of two years, and the court erred in refusing appellant's requested instruction for a verdict in its favor.

For the reasons noted, the judgment of the trial court is reversed, and judgment is here rendered in favor of appellant.

CONNER, C. J. (dissenting). I have been unable to concur in the conclusion reached by my associates, and as briefly as I can will state the contrary view entertained by me. The majority opinion proceeds upon the theory that, notwithstanding the fact that the evidence may sustain the verdict, to the effect that appellee was originally injured through the negligence of appellant, from which injury he finally suffered loss and damage in the amount of the verdict, and that, for a grossly inadequate consideration, he was induced to release his right by fraudulent means on the part of appellant's servants, he must nevertheless suffer the loss of such damage merely because of a technical fault in failing to institute his suit for relief in time. The question presented, therefore, is of grave concern, not only to appellee, but to all others in the future who may find themselves in a like situation. It is likewise of serious import to appellant, for, if the two instead of the four year statute of limitations should be applied, appellant is entitled to that repose and freedom from suit which, on grounds

of public policy, it has been deemed wise to provide.

It may not be amiss to further premise that appellee alleged that he did not fully know that his injuries would incapacitate him beyond recovery until October 22, 1911, and the jury evidently so found, inasmuch as they returned a verdict for appellee under the court's instruction that to recover he must have instituted his suit "within two years from the time it became known to him, or by the use of reasonable diligence he could have known the nature and extent of his injuries." If this finding has sufficient support in the evidence, it is, of course, conclusive in appellee's favor on the issue of limitation even as applied by the majority. But, accepting the conclusion of the majority that appellee certainly knew as early as October, 1908, the nature and full extent of his injuries, and hence of the falsity of the representations which induced him to execute the release set out in his petition and copied in the opinion of the majority, the writer nevertheless thinks that it is the four, and not the two, year statute of limitation that should be applied to the circumstances of this case.

Had appellee declared on his original cause of action alone, it would not have been necessary on the part of appellant to plead the release as a defense. In such case appellee's petition would have been subject to exception as presenting an action barred by limitation. It was essential, therefore, that appellee go farther. He did so. He set up the release executed by him and the fraud which induced its execution, and sought its cancellation. Had he failed either to allege or to prove the fraud, and thus secure cancellation, his suit must likewise have failed, for the release in that event would have constituted a bar to his original cause of action. Appellee was therefore forced to plead as he did, and his action was and is essentially one in equity to cancel, with a prayer for relief that restores his rights as they were at the time of executing the release. To this action, as is conceded in the majority opinion, the four-year statute of limitation applies.

There is a class of cases to which the rule of the majority properly applies; but this, I think, is distinguishable from them. Those are cases where the fraud relied upon is of a character that renders the instrument in question void ab initio, as where the instrument has been misread to the parties executing it, or where there has been a surreptitious substitution of one paper for another. In such cases courts of law, as contradistinguished from courts of equity, may take cognizance of the question, and treat the instrument as never having had force or vitality—as having at no time constituted an obstruction to a recovery of that which the instrument apparently casts upon an-

other. Courts of law, therefore, proceed upon the theory that limitation begins at the period when the original cause of action arose, and that it never in fact ceases, though perchance it may be suspended by fraud until such time as the fraud was or ought to have been discovered, when the complaining party is again made chargeable with the limitation made applicable by the statute to the original right. This class of cases may be illustrated by the following decisions and authorities therein cited, to wit: Girard v. St. Louis Car Wheel Co., 27 S. W. 648, 123 Mo. 358, 25 L. R. A. 514, 45 Am. St. Rep. 556; I. & G. N. Ry. Co. v. Harris, 65 S. W. 885; Och v. M., K. & T. Ry. Co., 130 Mo. 27, 31 S. W. 962, 36 L. R. A. 442; George v. Tate, 102 U. S. 564, 26 L. Ed. 232.

In the case here, however, the fraud relied upon does not touch the instrument itself. Appellee knew its exact terms and its legal effect, which in terms is fully sufficient to forever discharge any right of recovery upon his original cause of action. The fraud relied upon to defeat the release antedates and is wholly extraneous from its execution. Appellee signed the precise instrument which he intended to sign, and it is voidable only, and not void. In all such cases the integrity and binding force of the contract must stand until a court of equity sets it aside. A court of law cannot do so. See the following cases and authorities therein cited: George v. Tate, 102 U. S. 564, 26 L. Ed. 232; State v. Stuart, 111 Mo. App. 478, 86 S. W. 471; Hancock v. Blackwell, 139 Mo. 440, 41 S. W. 205; Vandervelden v. C. & N. W. Ry. Co. (C. C.) 61 Fed. 54. It can make no difference in applying the principle that our courts administer both legal and equitable relief, or that the issues relating to cancellation and those relating to an action for damages are tried at the same time. Nor, as it seems to me, can it be material that the instrument sought to be set aside constitutes a release of damages, or a discharge of a right of action, instead of a conveyance or other form of contract. In either case he has the right to be placed in statu quo.

If the foregoing views as to the character of the release under consideration are correct, it must logically follow that after its execution it operated until set aside as an insuperable obstacle to appellee's original cause of action. Until then he had no right of action on the original cause alone. The primary purpose of this suit, therefore, was, as of necessity it must be, if maintainable at all, to cancel the release under consideration. In such cases, in the absence of circumstances not pleaded in this suit, it takes four years to bar the plaintiff's right, notwithstanding as incidental to the relief of cancellation the plaintiff also seeks as is allowable, the further relief of full compensation for that thing of value which he released to appellant. See C., T. & M. C. Ry. Co. v.

Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39.

It is true that appellee might have instituted his suit earlier; but was he compelled to in the absence of any plea on appellant's part involving a defense of delay other than the two-year statute of limitation? To my mind under such circumstances it is fully sufficient that his suit was instituted, as was done, within four years from the time of his discovery of the fraud, or from the time when, in the exercise of proper care, he should have discovered it.

It is thought that the following decisions of our own courts support the conclusions noted, viz.: McCord v. Nabours, 101 Tex. 496, 109 S. W. 913, 111 S. W. 144; Evans v. Goggan, 5 Tex. Civ. App. 129, 23 S. W. 854; Railway Co. v. Jowers, 110 S. W. 946. Quoting from the headnote in the case of McCord v. Nabours, supra, it is said: "In an action to set aside for fraud a sale of corporate stock, and recover dividends collected thereon by the defendant as stockholder, the latter claim, as well as the former, was cognizable in equity, and governed by the limitation of four years instead of two years." The case of Evans v. Goggan, supra, by the Court of Civil Appeals for the Third District, seems clearly in point. That was a suit for the cancellation of a contract of purchase of a piano, and to recover the amount paid on the ground of the fraud alleged. The fraud charged was not such as rendered the instrument void, and the suit was not only entertained, but the court, in disposing of one of the assignments, used the following language, which has application here: "Appellant complains of a charge of the court which applied the two-year statute of limitation to plaintiff's prayer for recovery of the amounts paid on the contract upon its cancellation. The charge in this respect was erroneous. The suit was for rescission of the contract, and upon judgment of that character the consequences of rescission would follow. The question was: When would the right to a rescission be barred? The statute does not specifically provide for it, but provides that every other personal action 'for which no limitation is otherwise prescribed shall be brought within four years next after the right to bring the same shall have accrued, and not afterward.' Rev. St. art. 3207. It has been decided that the statute of four years applies to an action for rescission of a contract consummated in fraud. Cooper v. Lee, 75 Tex. 114, 12 S. W. 483. If, then, the plaintiff is entitled to a rescission, and is not barred by limitation in that action, he would be entitled to complete restoration of his rights upon rescission. The amount paid on the contract should be restored to him, and its recovery would not be governed by a different period of limitation from that which would govern the action itself. The

two-year statute, as for debt, or open account, or money had and received, would not apply."

If the time at my command admitted, other cases of like character could doubtless be found; but those last cited will illustrate the view I have attempted to present. In each of the cases cited the ultimate object of the plaintiff was to recover money or other thing of value lost by virtue of some contract or instrument sought to be annulled; but the relief so sought was held to be incidental to the cause of action for cancellation, and that the four-year statute of limitation alone was applicable.

Other grounds for reversal have not been considered by the writer; but I feel impelled to conclude that the judgment herein should not be reversed on the ground stated by the majority.