### JOSIE TIPPETT ET AL. v. M. M. BROOKS.

Decided January 11, 1902.

**1.—Deed—Married Woman—Minority of Husband.**

A deed by a married woman in which she is joined by her minor husband, if acknowledged in compliance with the statute, is sufficient to convey her separate real estate. Rev. Stats., art. 4618.

**2.—Same—Attorney and Client.**

A deed made by a client to an attorney is not rendered invalid by the mere fact of such relationship, but will be upheld in the absence of unfairness or undue influence on the part of the attorney. Following Goar v. Thompson, 19 Texas Civil Appeals, 330.

**3.—Same—Married Woman's Acknowledgment.**

A married woman's separate acknowledgment of a deed is not vitiated by the mere presence of the grantee at her privy examination.

Appeal from Hunt. Tried below before Hon. H. C. Connor.

*J. G. Matthews,* for appellants.

*L. A. Clark* and *Geo. S. Perkins,* for appellee.

RAINEY, Chief Justice.—This suit was brought by appellants to cancel a deed to certain real estate executed by Josie Tippett and her former husband, N. W. Heron, to M. M. Brooks, appellee. The grounds relied on for cancellation are, in effect: 1. That the land was her separate property, and at the time the deed was executed her husband, N. W. Heron, was a minor and incapable of legally consenting to the conveyance, though joining her therein. 2. That at the time of the execution of said conveyance said Brooks was her counsel representing her in seeking to recover the possession of said land, and undue advantage was taken of her. 3. That the deed was not properly explained to her at the time by the notary taking her acknowledgment.

Defendant plead the general issue. The case was tried before the court without a jury and judgment rendered against appellants, from which this appeal is prosecuted.

*Conclusions of Fact.*—The conclusions of fact of the trial judge are supported by the evidence and they are adopted as the conclusions of this court, to wit:

"On the 29th day of January, 1898, and prior thereto, the plaintiff, Josie Tippett, was the owner of the land in controversy, subject, however, to a life estate of her mother, Rachel Morgan, to one-third of the land. On said date the plaintiff, Josie Tippett, joined by her first husband, N. W. Heron, executed and delivered to the defendant, M. M. Brooks, a general warranty deed to the land in controversy, reciting as a consideration, which was in fact the true consideration, an attorney's fee of $150, one pair of mules, $125, and a note secured by a vendor's lien on the land for $630, said note payable to the husband of Josie Tippett, and recited that it was given as a part of the purchase money for 68 acres of land (the land in controversy) deed by N. W. Heron, plaintiff's then husband, to M. M. Brooks. Said deed is in regular form and shows that Josie Tippett's statutory separate acknowledgment was taken by C. E. Mead, a notary public; said deed was also fully explained to Josie Tippett by the notary before she signed the same, and the $630 note was delivered to her at the time she signed the deed, but no one explained to her to whom the note was payable. The price paid by defendant for the land was the fair market value for the same, and the defendant bought same at the request of Josie Tippett and her first husband, her husband doing most of the talking about the trade.

"At the time Josie Tippett and her husband executed the deed to defendant they were living on the defendant's place, and the first talk of the sale grew out of the relation of the defendant's employment by N. W. Heron (Josie Tippett's first husband) to get possession of the land from Rachel Morgan (Josie's mother) and her husband J. C. Morgan, who were in possession of the land, claiming an interest therein, and in pursuance of said employment, and defendant acting under same, there was perfected a compromise, in which Rachel Morgan and her husband agreed to take a life estate to a certain one-third of the land,

Josie taking the remainder; deeds were prepared in accordance with said agreement, but were never executed, because before they were executed defendant bought the interest of Morgan and wife as well as that of the plaintiff and her husband.

. "When Josie Tippett and her first husband, N. W. Heron, signed the . deed, Josie was 16 years old, and her husband was 17, but a man in size, and claimed to be 19, and after the execution of the deed, and before he was 19, defendant, as attorney for N. W. Heron, filed an application to remove his, Heron's disabilities, alleging that he, Heron, owned the land in controversy, and that he desired to make a deed to the same. Since the execution of the deed and before the filing of this suit, N. W. Heron died, and Josie married her present husband and plaintiff, D. C. Tippett. N. W. Heron died leaving plaintiff the pair of mules mentioned in the deed and $90, the only portion of the consideration for said deed remaining, they having squandered the balance in a manner unknown.

"Josie Tippett and her first husband, N. W. Heron, transferred the note given by defendant for the land to N. W. Heron's father by written memoranda on the back thereof, signed by both Josie and her husband, and old man Heron transferred the same to the Greenville National Bank, where and to whom defendant paid it.

"The '$150 law fee' mentioned in the deed was owing by plaintiff, Josie, and her then husband, N. W. Heron, to defendant for legal services performed by defendant in getting possession for them of two-thirds of the land. Rachel Morgan had been married to one Giddings, who was dead, and plaintiff, Josie Tippett, was their only child. Giddings died leaving nothing but the land in controversy in this suit, it being his separate property, but never having been used as a homestead. In fact there was no improvements on it whatever. After his death his wife married Morgan, and they moved upon the land, erected a house thereon, and put some fifteen acres thereof into cultivation. When Josie Tippett married her first husband, N. W. Heron, Morgan and wife had possession of the entire tract of land, and were claiming an interest therein of more than one-third life estate for Rachel Morgan. Josie and her then husband employed defendant to get possession of two-thirds of the land. Defendant succeeded in getting an agreement out of Morgan and wife by which they would take one-third of the land during the life of Rachel Morgan, and give immediate possession of the other two-thirds to Josie and her husband. Defendant and Morgan went on the ground and measured off the land, and deeds of division were made by the parties. The work done by defendant in bringing about this settlement was worth fully $150, and everything was done in good faith. Before the division deeds were executed defendant bought out all the parties and went into possession. His services as attorney had, however, ceased at the time he purchased as everything was done by him that he was to do, and nothing remained to be done except the

actual exchange of the deed already prepared, and this would have been done had Brooks not purchased out all parties.

"Defendant was employed by both N. W. Heron and his wife Josie, the plaintiff, Josie Tippett. She understood the trade they made with the defendant for legal services fully, and signed a note and a mortgage on the land securing the same. The $150 was evidenced by a note signed by both N. W. Heron and Josie, and this was secured by a mortgage on the land executed by both and properly acknowledged and delivered to defendant. When N. W. Heron first came to defendant to employ him his father was with him, but he made several trips to see the defendant about it, and Josie, his wife, was with him at the time the note and mortgage was executed, they being executed in defendant's office in Greenville.

"When the contract was made, Josie and her husband lived on defendant's farm; his father had rented it and subrented a part of it to his son, N. W. Heron. This was done with the consent of the defendant. Josie and N. W. Heron lived on the same farm that old man Heron lived on in 1898, and they all left Texas together to go to Tennessee, where the Herons came from to Texas. N. W. Heron died in Tennessee about the time he arrived there in 1898. Josie at once came back to Texas and went to live with her mother and Morgan, where she resided until she married Tippett, in November, 1899. When she arrived at her mother's from Tennessee she had $65, and after that old man Heron sent her $20. Josie lived a widow from December, 1898, to November, 1899, when she married her present husband.

"N. W. Heron and his father were both present at the time the money was borrowed from the bank on the $630 note given by defendant, and also at the time it was sold to the bank. As stated in my general findings, this note had been transferred by Josie and her husband to old man Heron before it was presented at the bank.

The value of the two-thirds of the land set apart to Josie and her husband in the partition effected by defendant with Morgan and wife was $12 to $15 per acre, and of that part set apart to Morgan and wife in said partition $20 to $25 per acre at the time defendant purchased it. Nothing was done with the application filed by defendant to have the disabilities of N. W. Heron removed. His father accepted service in that case, but the case never went to trial, and seems to have been dropped."

*Conclusions of Law.*—1. Under the statute a married woman can convey her separate real estate by her husband joining therein and she being privily examined separate and apart from her husband and making the proper acknowledgment. Rev. Stat., art. 4618.

If she is a minor she becomes emancipated from the disability of minority by her marriage, and her rights as a married woman are not burdened in that respect by the minority of her husband. The statute in requiring the husband to join her in the conveyance makes no

distinction between an adult husband and a husband under the disability of minority. As the statute makes no distinction we do not feel authorized to make any. To do so would, in our opinion, be engrafting upon the statute an exception not authorized by any legitimate construction of the statute. We therefore conclude that a conveyance of real estate made by a married woman joined by her minor husband, and properly acknowledged by her, is valid and conveys her separate estate therein.

2. A conveyance made by a client to an attorney, in the absence of unfairness or undue influence on the part of the attorney, will not be set aside simply for the reason that such a relation existed. The rule governing contracts between parties holding fiduciary relations is fully discussed by Finley, C. J., in Goar v. Thompson, 19 Texas Civil Appeals, 330. There it is held that where "fiduciary relation exists between parties to a transaction and the person occupying the position of influence or trust obtains an advantage thereby in the dealing had between them, the burden rests upon him to show its fairness when it is attacked for fraud by the other party. Under such conditions, equity indulges the presumption of unfairness, and requires proof at the hands of the party claiming the validity and benefits of the contract that it is fair and reasonable." Applying this test to this cause, we are of the opinion that the evidence fully sustains the findings of the trial court to the effect that the transaction was fair and reasonable. The evidence shows that the transaction was fairly conducted on the part of appellee, Brooks, he paying a fair and full consideration for the land, and there is no evidence that he used or attempted to use any undue influence in consummating the deal.

3. The presence of Brooks when the privy examination of the wife was made by the officer did not vitiate her acknowledgment of the conveyance. He took no part in the examination, said or did nothing to induce her to make the acknowledgment, and the evidence is sufficient to warrant the conclusion that the deed was fully explained to her and that she understood the transaction at the time and willingly entered into it. She indorsed the note given by Brooks, evidently knowing for what it was executed. No complaint was made of the unfairness of the transaction until the purchase money had been squandered and she had married the second time. That she did not reap the benefit she should have done from the transaction was not the fault of Brooks, but was the fault of those whose duty it was to protect her interest, and for their conduct Brooks is not chargeable.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.