**Fancher ARCHER, Petitioner,**

v.

**Nova Dean GRIFFITH, Respondent.**

**No. A–9644.**

Supreme Court of Texas.

Nov. 18, 1964.

Rehearing Denied May 19, 1965.

John E. Allen, L. Hamilton Lowe, Austin, for petitioner.

Kuykendall & Kuykendall, Austin, for respondent.

WALKER, Justice.

This is an action to set aside a deed executed by Mrs. Nova Dean Griffith, respondent, to her attorney, Fancher Archer, Esq., petitioner, pursuant to the provisions of a contingent fee contract between the parties. The case was tried before the court without a jury, and judgment was rendered cancelling the deed and awarding petitioner $400.00 in addition to the amounts previously received by him for his services to respondent. No findings of fact or conclusions of law were filed or requested. The Court of Civil Appeals affirmed. Archer v. Blakemore, 367 S.W.2d 402.

Respondent originally employed the law firm of Archer & Archer in January, 1959, to institute divorce proceedings in her behalf. She made a deposit for court costs and gave them $100.00 at the time, but according to her testimony they said their fee would be collected from the husband. According to their testimony she orally agreed to pay a contingent fee of one-fourth of any property recovered for her in the suit. After a preliminary investigation of the property rights involved, the divorce action was instituted by filing an original petition which was verified by respondent and signed by petitioner as her attorney. She there prayed for a temporary restraining order, temporary alimony, divorce, custody of the minor child born to the marriage, an allowance for the support of the child, and attorney's fees in the amount of $1,000.00. Prior to the issuance of a re-

straining order, however, respondent notified her attorneys that she and her husband had effected a reconciliation and were living together again. No further action was taken in the suit at that time, and no additional payment was requested from her.

About eighteen months later respondent again consulted the Archers and insisted on going forward with the suit. She then signed a written contract employing petitioner to represent her "in preserving, keeping and managing my separate property and my community property * * * and * * * to file suit and take such other action and steps by suit or otherwise to preserve and protect my property." It was further stipulated that in consideration of services rendered and to be rendered, petitioner would be entitled to one-fourth of "whatever property either personal, real or money which shall be determined to be mine either through settlement or suit."

After making further investigation, petitioner prepared and filed an amended original petition in the divorce action. A temporary restraining order was issued and served on the husband, who thereupon employed an attorney. The latter filed special exceptions to the petition, had the case put on the jury docket, and indicated that the suit would be contested. Petitioner then began preparing for a contest. Among other things he drafted a second amended original petition with a prayer for a receivership and the recovery of $5,000.00 attorney's fees and sent a copy to the husband's lawyer.

This brought about serious overtures for a settlement of the case. The negotiations, which involved a number of conferences and extended over a period of several weeks, resulted in the execution of a settlement agreement whereby the property in controversy was divided as follows: (1) the home, the business known as Griffith Wall Paper and Paint Company, a 1951 Packard automobile, and 10.8 shares of stock in American Guaranty Accident Life and Health Insurance were set apart to the husband; (2) the household furnishings and 5.4 shares of American Guaranty Accident Life and Health Insurance were set apart to the wife; (3) all savings and bank accounts and certain other securities were divided equally; and (4) it was agreed that the premises on 13th Street in Austin, which had been acquired during the marriage, would be owned by the parties in equal shares subject to an existing encumbrance in the amount of approximately $22,500.00, and an additional lien was impressed on respondent's undivided one-half interest to secure payment of $7,750.00 to the husband in satisfaction of his claim for separate funds used to purchase the property. It was further stipulated that an attorney's fee of $500.00 would be paid by the husband to Archer & Archer, and that all other attorney's fees would be paid by the respective parties to his or her attorney.

The hearing in the divorce action was held the following day, and judgment was entered awarding respondent a divorce and custody of the child. According to the recitals of the judgment, the settlement agreement was explained to the court, which found that there was no necessity for adjudicating the property rights of the parties. Immediately after the divorce was granted and before the parties left the court house, respondent executed and acknowledged the following three deeds: (1) a conveyance of the home to her former husband; (2) a deed establishing their interests in the 13th Street property in accordance with the settlement agreement; and (3) the instrument now in controversy, which conveyed to petitioner one-fourth of respondent's undivided one-half interest in the 13th Street property. The husband later paid petitioner the $500.00 fee as provided in the settlement agreement.

■ Petitioner insists that the trial court erred in setting aside the deed because there is no evidence of any fraud in connection with its execution and delivery. It was stipulated by the parties that the relationship of attorney and client existed between petitioner and respondent when the deed was executed and delivered. That

fact has an important bearing on the controversy. The relation between an attorney and his client is highly fiduciary in nature, and their dealings with each other are subject to the same scrutiny, intendments and imputations as a transaction between an ordinary trustee and his cestui que trust. "The burden of establishing its perfect fairness, adequacy, and equity, is thrown upon the attorney, upon the general rule, that he who bargains in a matter of advantage with a person, placing a confidence in him, is bound to show that a reasonable use has been made of that confidence; a rule applying equally to all persons standing in confidential relations with each other." Story, Equity Jurisprudence, 7th ed. 1857, § 311. This principle has always been recognized by the Texas courts.[1] Cooper v. Lee, 75 Tex. 114, 12 S.W. 483; Holland v. Brown, Tex.Civ.App., 66 S.W.2d 1095 (writ ref.) Bell v. Ramirez, Tex.Civ. App., 299 S.W. 655 (writ ref.).

■ The general rule mentioned above applies to a contract or other transaction relating to compensation provided the attorney-client relationship was in existence at the time. "Although an attorney is not incapacitated from contracting with his client for compensation during the existence of the relation of attorney and client, and a fair and reasonable settlement of the compensation to be paid is valid and enforceable, if executed freely, voluntarily, and with full understanding by the client, the courts, because of the confidential relationship, scrutinize with jealousy all contracts between them for compensation which are made while the relation exists. There is a presumption of unfairness or invalidity attaching to the contract, and the burden of showing its fairness and reasonableness is on the attorney." Pomeroy, Equity Juris-

prudence, 5th ed. 1941, § 960d. See also Tippett v. Brooks, 28 Tex.Civ.App. 107, 67 S.W. 512 (writ ref., 95 Tex. 335, 67 S.W. 495); Laybourne v. Bray & Shifflett, Tex. Civ.App., 190 S.W. 1159 (no writ), on subsequent appeal, 214 S.W. 630 (writ ref.); Annotation, 19 A.L.R. 847.

■ We assume without deciding that the parties to this case were dealing at arm's length when the written contingent fee contract was signed by respondent. If such agreement had been binding upon both parties, it might afford a basis for upholding the deed without regard to the fairness of the transaction. In this instance, however, petitioner was married when the contract was made, and the agreement was voidable at her election. It does not appear that she owned any separate property, and the employment of an attorney to institute and prosecute proceedings for divorce and partition of community property is not an incident of the wife's power to manage, control and dispose of her separate property. Cf. Cauble v. Beaver-Electra Refining Co., 115 Tex. 1, 274 S.W. 120; Parker v. Boyles, Tex.Civ.App., 197 S.W.2d 842 (writ ref. n. r. e.).

■ Petitioner argues that the contract in the present case is now binding on respondent because she adopted the same by executing the deed after her disabilities of coverture were removed. He also says that since the agreement has been fully performed on both sides, respondent is not entitled to recover the property she voluntarily conveyed in pursuance of its provisions even though the contract was voidable and unenforceable as an original proposition. See Leake v. Saunders, 126 Tex. 69, 84 S. W.2d 993; Pitts v. Elser, 87 Tex. 347, 28 S. W. 518; Oil Exchange & Board of Trade v. Hogle, Tex.Civ.App., 272 S.W. 1114 (no

---

1. Professor Pomeroy points out that: "The courts of England have uniformly watched all the dealings between attorneys or barristers and their clients with the closest scrutiny, and have established very rigorous rules concerning them. It must be conceded that this equitable doctrine has been to a considerable ex-

tent ignored, and these rules have been greatly modified in their application, by the courts in several of the American states. While the fact must be admitted, it cannot be too much deplored." Pomeroy, Equity Jurisprudence, 5th ed. 1941, § 960.

writ). These cases have no application where, as here, the instrument said to constitute adoption or performance of the pre-existing contract was made to an attorney by his client. In view of the circumstances under which the agreement and deed in this case were executed, the contingent fee contract does not preclude an inquiry into the fairness of the entire transaction and it cannot be said as a matter of law that the deed amounts to an adoption or voluntary performance of the contract.

Respondent alleged that petitioner was paid a total of $600.00 in cash; that such amount was an adequate and reasonable fee for the services rendered; that the net market value of the interest in the 13th Street property which she conveyed to petitioner was $7,000.00; and that the fee which petitioner thus received was so exorbitant and unreasonable as to require that the deed be cancelled and set aside. After she established that the conveyance was executed and delivered during the existence of the attorney-client relationship, the burden was on petitioner to show that his acquisition of the interest conveyed by the deed was fair, honest and equitable. The cases of Lesikar v. Lesikar, Tex.Civ.App., 251 S.W.2d 555 (writ ref. n. r. e.), Coen v. Stout, Tex.Civ.App., 245 S.W.2d 971 (no writ), and Kull v. Brown, Tex.Civ.App., 165 S.W.2d 1011 (no writ) are not in point, because they did not involve a claim that the transaction was unfair to the client.

■ Aside from one deficiency in proof which will be noticed later, the validity of the deed in the present case turns upon whether the preexisting agreement was, in fact, so unfair and unreasonable that a court of equity should intervene and set the conveyance aside. Since there are no findings of fact or conclusions of law, it must be presumed that the trial court found that it was. The question for us to decide then is whether the record shows conclusively that such implied finding is erroneous. We take it for granted that petitioner acted in good faith, but that does not entitle him to

prevail as a matter of law. The issue here is constructive or legal fraud and not actual fraud. Actual fraud usually involves dishonesty of purpose or intent to deceive, whereas constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests. 37 C.J.S. Fraud § 2; 23 Am.Jur. Fraud and Deceit § 4.

Assuming as we do that a contingent fee arrangement is not necessarily improper in a divorce action, the contract in this case must be viewed prospectively in the light of the circumstances existing at the time it was made. When it is so considered, there is evidence tending to show that the agreement was fair and reasonable. The record shows in some detail the services performed by petitioner and his partner. In response to hypothetical questions, three members of the Travis County Bar testified that in their opinion a twenty-five per cent contingent fee was not unreasonable. According to petitioner's testimony, however, he waived his right to an interest in the bank accounts, household furnishings and securities recovered for respondent, and balanced the same off against the $500.00 fee paid by the husband. Respondent's share of the bank accounts was about $300.00, but there is no competent evidence showing the value of the securities and furniture set apart to her under the terms of the settlement agreement. Since we have no way of knowing the value of such property, it is impossible to determine whether the offset was fair and proper under the circumstances.

■ Entirely aside from that problem, it is our opinion that the record will support the conclusion that the contingent fee contract was so exorbitant and unreasonable as to require that the conveyance be set aside. There is no direct evidence as to the value of the 13th Street property when the contract was executed on September 20, 1960. It was purchased in 1951 for a total consideration of $60,500.00, and there

is testimony indicating that property values in the area have increased since 1951. About five months after the divorce, petitioner wrote respondent that he had told some people, apparently real estate agents, "that if they had a proposition to make with a definite amount of $110,000.00 with earnest money to pay down, we would then listen to their proposition and make a decision as to whether or not we would sell." The record also contains a notation in petitioner's handwriting that the estimated value of the 13th Street property on December 1, 1960, was $90,000.00. Petitioner testified that the notation was made in connection with the settlement negotiations and had no meaning as far as value was concerned, but the trial court was not required to accept this explanation. In the light of the foregoing evidence and in view of the absence of any other proof of value, the court was entitled to conclude that the property was worth at least $90,000.00 at the time the contract was made. On the basis of such valuation and after deducting the amounts unpaid on the outstanding encumbrance and the lien imposed on respondent's interest in favor of her former husband, the computed value of the one-eighth interest conveyed to petitioner is more than $6,400.00. To this must be added the $600.00 he was paid by respondent and her husband, which means that his total compensation was in excess of $7,000.00.

One member of the Travis County Bar, who represented the husband in the divorce action and who was thus familiar with the issues and property involved in the suit, testified that from $500.00 to $750.00 would have been a reasonable fee for the services rendered by petitioner. This evidence is not necessarily controlling, because the witness was speaking of a fee that would be paid without regard to the outcome of the litigation. If accepted by the trial court, however, it shows that the contingent fee agreement yielded petitioner approximately ten times what he could reasonably have expected to receive under a fixed fee agreement.

The schedule of fees recommended by the State Bar of Texas, which was introduced in evidence, does not recognize contingent fee arrangements in divorce actions. There is a section dealing with contingent fees, but it is prefaced by a paragraph which states, in effect, that such section does not apply to divorce suits and certain other types of cases that are dealt with specifically elsewhere in the schedule. In the section applicable to divorce actions, a minimum fee of $250.00 is recommended in an uncontested case with $100.00 to be added if the custody of children is involved and an agreement is reached. It further states that: "For the legal services rendered in connection with the property settlement, the additional charge, based on the fair net value of the property allocated or set aside to the attorney's client, should be 10 per cent on the first $5,000.00 and five per cent on the excess; where unusual or complex problems are involved or where the parties cannot agree and the matter must be decided by litigation, a higher charge should be made." The trial judge, who was familiar with the problems involved in the divorce action, was entitled to conclude that the contract now under attack provided for a fee three and one-half times greater than the minimum fee recommended in such schedule.

The certainty or contingency of the compensation is one of the factors to be considered by an attorney in fixing his fee. See Canon 11, Article XIII, Section 3, of the State Bar Rules, Vernon's Ann.Civ.St. We are not concerned here, however with the ordinary contingent fee arrangement where there is considerable doubt that the attorney will receive anything for his services. The contract obligated respondent to pay petitioner one-fourth of all property determined to be hers, whether by settlement or suit. She and her husband owned a large amount of community property, and the record does not establish that there was any serious question as to her right to a divorce. Even if they were permanently reconciled, petitioner would

have been entitled to recover the reasonable value of his services despite the agreement for a contingent fee. Kelly v. Gross, Tex.Civ.App., 4 S.W.2d 296 (writ ref.). Subject to this one contingency, a substantial recovery was reasonably certain even after making allowance for the husband's separate funds used to purchase the real estate. It was very likely, therefore, that petitioner would receive either the reasonable value of his services or one-fourth of the property set apart to his client when the divorce was granted. In this respect his situation was quite different from that of an attorney employed to prosecute a damage suit or establish a constructive trust.

It is a matter of common knowledge, moreover, that divorce cases are frequently settled, and that the lawyers usually do less work in such instances than where the issues are contested through the trial and appellate courts. The attorney who represented the husband in the divorce action testified that the contract was unfair to respondent in that no provision was made for a reduction of the fee in the event of a settlement. He regarded one-fourth of the recovery as a reasonable contingent fee if petitioner had been required to try a contested case, but it was his opinion that "twenty-five per cent straight across the board is too high." He thought the contract was "wrong" and that "they took advantage of her, just to be plain about it."

After reading the entire statement of facts and carefully considering all of the evidence, we are unable to say that either party to this suit is entitled to prevail as a matter of law. Whether the contingent fee contract and the conveyance executed pursuant thereto were so unfair and inequitable as to warrant the intervention of a court of equity is a question of fact, and that issue was resolved by the trial judge in respondent's favor.

Petitioner also contends that respondent ratified the contract and deed by allowing him to look after the 13th Street

property and consulting him regarding its sale after the divorce was granted. These dealings apparently are referable to the contract of employment and occurred while the attorney-client relationship existed between the parties. Although there is a conflict in the evidence, respondent's testimony will support the conclusion that she did not realize until May, 1961, that she had signed a contract entitling petitioner to one-fourth of the recovery or a deed conveying him an interest in the real estate. She "just signed what they thought I should sign," and originally it was her understanding that petitioner's fee would be collected from the husband. After the property settlement was worked out and before the divorce was granted, she was advised that there would be an additional fee. She told her attorneys that if she owed them anything, it would have to be paid at the time the property was sold "and they said that was all right." There were no further dealings between them after she discovered that petitioner had a deed to an interest in the real estate. Aside from the fact that there is no pleading of ratification, it is our opinion that such defense is not conclusively established by the evidence and that the judgment setting aside the deed must be affirmed.

By cross-point in the Court of Civil Appeals, respondent contended that the trial court erred in awarding petitioner $400.00 in addition to the $600.00 he had already received. She asserted that such recovery is without support in either the pleadings or the evidence. The intermediate court refused to consider the question because respondent did not perfect an appeal from the judgment in so far as it is adverse to her.

Petitioner attempted to limit the scope of his appeal to the portion of the judgment which set aside the conveyance. See Rule 353, Texas Rules of Civil Procedure. Such attempt was ineffectual in this instance, however, because the judgment is not severable in that manner. The $400.00 award is predicated on respondent's offer,

in her petition, to pay petitioner any additional fee to which he might be entitled in the event the conveyance should be set aside. It is dependent upon her right to the relief she sought, and could not be allowed to stand if it had been determined that the trial court erred in cancelling the deed. When petitioner perfected his appeal, therefore, the entire judgment was brought to the appellate court for review and respondent was entitled to urge her cross-point attacking the portion of such judgment which is adverse to her. See Dallas Electric Supply Co. v. Branum Co., 143 Tex. 366, 185 S.W.2d 427, and authorities there cited.

 Since respondent offered to do equity, it was unnecessary for petitioner to seek a recovery on the quantum meruit in the event the deed was set aside. There is ample testimony to support the additional $400.00 award in his favor, and the cross-point is accordingly overruled.

The judgment of the Court of Civil Appeals is affirmed.

GRIFFIN, SMITH, GREENHILL and STEAKLEY, JJ., dissenting.

GREENHILL, Justice (dissenting).

This is not a case in which the trial court was called upon to fix a reasonable attorney's fee. Nor is it a suit by an attorney for his fees in which the amount thereof is an ordinary issue of fact. This is a suit to set aside a deed, one which had been executed more than a year before suit was brought, and the ground alleged for setting the deed aside is fraud.[1] In my opinion, there is absolutely no evidence of fraud, actual or constructive.

The deed in question was executed by a feme sole. Its opening line is, "I, Nova Dean Griffith, a feme sole * * *." The

deed was signed after her divorce had been granted. Her disabilities were thus removed as effectively as if she had gone to court to get them removed so that she would be free to execute agreements. She was of age, had been married and divorced before, and had the mental capacity to manage her affairs.

The opinion of the majority places emphasis upon the fact that the execution of the deed arose out of a contract made during marriage. The agreement was in writing and signed. It is short and simple, and it plainly provides for a contingent fee of one-fourth. Mrs. Griffith did not contend that she could not or did not understand it. Such an instrument was not void but only voidable. Leake v. Saunders, 126 Tex. 69, 84 S.W.2d 993 (1935). The execution of the deed, for services performed and to be performed in the future, after the removal of the disability of coverture, constituted an affirmance of the contract. Leake v. Saunders, supra. Thereafter the deed could only be set aside, as any other deed, for fraud, duress or mistake.

Moreover, when this suit was brought, the contract was fully executed as far as Mrs. Griffith was concerned. This Court in Podolnick v. Hamilton, 349 S.W.2d 715 (Tex.1961), said, "It is undoubtedly the rule that where a married woman has purchased property and paid part of the purchase price she cannot by rescinding the contract recover back that part of the purchase price which she has paid * * *." That part of the contract which has become executed is binding upon her in the absence of fraud or mistake. I see no reason why the rule should not work both ways; i. e., why it should not work as to property conveyed for a consideration as well as to property purchased.

In this day of equal rights for women, it should be borne in mind that equal rights carry with them equal responsibilities. In

---

1. Plaintiff's pleading reads in part, "* * * the conveyance by her to Fancher Archer of the property worth approximately $7,000 would constitute such an exorbitant and unreasonable fee as to constitute a fraud upon this plaintiff. * * *"

my opinion, the acts of the divorced Mrs. Griffith should be treated with equality and by the same standards as if the suit were one by Mr. Griffith. In such event the deed, in my opinion, could only be set aside for fraud, duress or mistake. Mistake and duress are not pleaded. So that leaves only fraud.

The Court of Civil Appeals correctly found that "the evidence shows * * * that appellant [Mr. Archer as well as his wife and partner, Mrs. Archer] fully, faithfully and satisfactorily performed all of his obligations to appellee under his contract of employment with her." That court and this Court find no evidence of actual fraud.

Since it is conceded that there is no actual fraud and that counsel fully, faithfully, and satisfactorily performed their obligations, the only possible basis for any species of constructive fraud is that the contingent fee of one-fourth fixed, agreed upon, and paid was so exorbitant as to shock the conscience. In my opinion there is no evidence to support such a conclusion in this case.

The only witness to testify that the fee was unreasonable was the same lawyer who had represented Mr. Griffith, the husband, in the divorce case. He testified that the Archers (the attorneys for the wife) had first contemplated asking $5,000 attorneys' fees to be paid by his client, the husband. At this lawyer's request, that pleading was not filed. The petition which was filed asked for $1,000 of attorneys' fees to be paid by his client. Apparently he considered it his duty in representing Mr. Griffith to get the fee lowered so that his client would not have to pay so much. So it was agreed that Mr. Griffith would pay $500, and that "all other attorneys' fees shall be paid by the respective parties to his or her attorney."

This lawyer had been a personal friend of Mr. Griffith for some 35 years. They had attended college together. He had fixed his fee to Mr. Griffith after the divorce and property settlement had been consummated. He charged Mr. Griffith considerably less attorneys' fees than he thought he was entitled to because of their friendship and because of Mr. Griffith's immediate cash position due to the property settlement. He testified that he thought he had earned a fee of $500 to $600 but he only charged him $350. He estimated that Mr. Archer should be entitled to about $750 on a fixed fee basis. Though he conceded that he had never handled a divorce action on a contingent fee basis and could not recall having ever heard of one being so handled, he testified that in his opinion a contingent fee of one-fourth was unreasonable. This had reference to the handling of the divorce matters incidental thereto and did not include the consideration of any handling of Mrs. Griffith's property after the divorce.

This lawyer, on cross examination, conceded that he had told Mr. Archer, the wife's attorney, that the divorce would be contested, and that he had said he did not think Mr. Archer could prevail. He had demanded a jury, paid the jury fee, and the case was placed on the jury docket.

At the time this lawyer was testifying by deposition, the Griffiths had been divorced; Mrs. Griffith had married a Mr. Blakemore; she had divorced Mr. Blakemore and was about to remarry Mr. Griffith. They subsequently did remarry. So the interest in the property conveyed to Mr. Archer was in a building in which Mr. Griffith, the attorney's former client, had a 50 per cent interest.

Taken in context, it is my opinion that this lawyer's testimony was that the contingent fee charged Mrs. Griffith was unreasonable. It does not constitute evidence of fraud At most, it amounts to a mere scintilla of evidence of fraud.

On the other hand, the completely disinterested witnesses who testified with regard to the contingent fee testified that it was reasonable. Mr. John Stayton and Mr. Gaynor Kendall of Austin so testified. Mr. Q. C. Taylor of Austin further testified that contingent fees of 25 to 33⅓ per cent were reasonable and customary in divorce cases;

that many times the lawyer under such arrangement ended up with little or nothing.

I find it difficult to accept the harsh inferences against the legal profession appearing in Cooper v. Lee, 75 Tex. 114, 12 S.W. 483 (1889). The individual attorney in that case, under the jury's findings, deserved to be spoken to sharply. He was the son-in-law of his aged, nearly blind father-in-law client. They lived in the same house, and the father-in-law had great trust and confidence in his son-in-law. That trust was betrayed, and it is understandable that the Court was aroused about it. But to say, in effect, that all completed transactions between all attorneys and their clients are suspect and presumably fraudulent until the contrary is proved, goes very far. That case, Cooper v. Lee, involved two tracts. The decision as to the first tract is correct and supportable, as in any other case, upon a resulting trust. The attorney son-in-law took his father-in-law's money and bought property in his own name with it. Under these facts, a resulting trust clearly arose. The action as to the second tract to set aside a deed was held to be barred by limitations. Hence the language concerning the attorney with regard to it was unnecessary to the opinion.

If the Court should desire to hold that contingent fee contracts in divorce cases are against public policy, that is one thing. But to say that executed contingent fee contracts are to be re-examined one to four years after they have been completed, with the former client being in a position to introduce a deed, cry "fraud" and rest, is, in my opinion, carrying things too far. In such cases, plaintiff should have to show fraud, duress, lack of capacity, undue influence, mistake, want of consideration, or any other legal concept applicable to other actions to set aside a deed.

Nevertheless, even assuming the harshness of the language of Cooper v. Lee to be the law, there is no evidence in this case that the contingent fee set and voluntarily paid was so exorbitant as to constitute a fraud upon Mrs. Griffith.

There are several opinions supporting contingent fees and conveyances in payment of them which are in accordance with this view: Kull v. Brown, 165 S.W.2d 1011 (Tex.Civ.App.1942, no writ), in which the Court enforced a one-third contingent attorney's fee for services to the wife in a divorce action; Hames v. Stroud, 51 Tex. Civ.App. 562, 112 S.W. 775 (1908, writ refused), in which a widow sought to set aside for fraud a conveyance of land to an attorney in payment of a fee and an instructed verdict for the attorney was upheld; and Parker v. Boyles, 197 S.W.2d 842 (Tex.Civ. App.1946, n. r. e.), in which the court held that as a matter of law a married woman was not entitled to have a deed to her counsel set aside, there being no proof of fraud or misrepresentation.

I would reverse the judgments of the courts below and render judgment that the plaintiff take nothing.

GRIFFIN, SMITH and STEAKLEY, JJ., join in this dissent.

ON MOTION FOR REHEARING
Rehearing denied.

POPE, Justice, (concurring).

Mrs. Griffith asserted that her contract was originally made at a time when she was a married woman and that the contract was voidable. The attorney-client relationship arose while she was thus favored. This fiduciary relationship lodged the burden of proof upon her attorney to overcome her charge that the fee was unreasonable. 1 Black, Rescission and Cancellation, §§ 48, 51 (2d ed. 1929). Counsel, charged with that burden, failed to convince the trier of fact. The judgment must therefore be affirmed.