**AFFIRMED and Opinion Filed September 24, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00714-CV

### ROBERT L. WILSON, Appellant
### V.
### J. RANDLE HENDERSON, Appellee

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-15162**

# MEMORANDUM OPINION

Before Justices Myers, Osborne, and Nowell
Opinion by Justice Osborne

After a bench trial, the trial court rendered judgment for appellant Robert L. Wilson on one

of his claims for breach of fiduciary duty against appellee J. Randle Henderson, his former

attorney. Wilson appeals, contending the trial court erred by denying Wilson's other claims for

breach of fiduciary duty and fraud. Because the evidence was sufficient to support the trial court's

findings of fact and conclusions of law, we affirm the trial court's judgment.

#### BACKGROUND

The Securities and Exchange Commission ("SEC") brought suit against Wilson on April

28, 2011 for violations of federal securities law.[1] Henderson represented Wilson in the suit and

---

[1] The SEC's complaint is not included in the appellate record. Wilson explains in his appellate brief that "[t]he underlying case concerned a marketing campaign involving the stock of China Voice Holding Corporation" and involved approximately 20 defendants. Wilson was "charged with three offenses: (1) misstatement of amount compensated; (2) misstatement of the source of compensation, and; (3) use of deceptive and manipulative devices that disseminated information."

also during the SEC's pre-suit investigation in 2010. Wilson consented to judgment on December 16, 2011, without admitting or denying the SEC's allegations. The consent judgment included permanent injunctive relief against Wilson. It also provided that Wilson would pay disgorgement and a civil penalty in amounts to be determined by the court. Henderson submitted Wilson's financial information to the federal court and argued that the civil monetary penalty assessed against Wilson should not exceed $100,000 in the aggregate. But in a final judgment dated November 28, 2012, the court ruled that Wilson was liable for disgorgement, penalties, and interest exceeding $1.4 million.

Wilson and Henderson initially agreed that Wilson would pay Henderson $250 per hour for representing him. On September 5, 2011, however, Henderson sent Wilson an email stating, "Balance due is $23,500.00. This is the final (turnkey) billing irrespective of whether we settle or go to trial." Wilson paid the balance due without objection, and Henderson continued to represent him until early 2013.

On November 28, 2016, Wilson filed suit against Henderson, asserting claims for breach of fiduciary duty, legal malpractice, fraud and fraudulent concealment, deceptive trade practices, and breach of contract. The parties filed multiple motions for summary judgment that the court granted in part and denied in part. The case proceeded to trial before the court on Wilson's claims in his sixth amended petition, including allegations of fraud and five alleged breaches of fiduciary duty. Wilson alleged that Henderson breached his fiduciary duty when he:

- Failed to return unearned fees and charged unnecessary fees ("Breach of Fiduciary Duty Count I");

- Modified his fee arrangement and failed to explain it ("Breach of Fiduciary Duty Count II");

- Failed to provide a detail of fees to justify his billings ("Breach of Fiduciary Duty Count III");

–2–

- Failed to provide or return Wilson's files and records ("Breach of Fiduciary Duty Count IV"); and

- Failed to have a written fee agreement for legal services ("Breach of Fiduciary Duty Count V").

Wilson's fraud claim arose from his allegation that Henderson falsely represented that the fees for his services would remain at $250 per hour.

Wilson and Henderson represented themselves at trial. Each testified, and Henderson also called an expert witness to discuss representation of clients in suits by the SEC in general and in the suit against Wilson in particular. The trial court made findings of fact and conclusions of law and rendered judgment for Wilson on Breach of Fiduciary Duty Count I, awarding Wilson $1,214.43 in damages and disgorgement of $10,000, plus interest on both amounts. But the court rendered judgment for Henderson on Breach of Fiduciary Duty Counts II, III, IV, and V, and on Wilson's fraud claim. Wilson now appeals, alleging in seven issues that "the trial court erred in ignoring substantial evidence" of his claims. Although Wilson's list of "issues presented" in his appellate brief contains only challenges to the sufficiency of the evidence, Wilson also presents argument and authorities to challenge the admissibility of expert testimony.

STANDARDS OF REVIEW

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Sheetz v. Slaughter*, 503 S.W.3d 495, 502 (Tex. App.—Dallas 2016, no pet.). When the appellate record contains a reporter's record, as in this case, findings of fact are not conclusive and are binding only if supported by the evidence. *Id.* We review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining if sufficient evidence exists to support an answer to a jury question. *Id.* When an appellant challenges the legal sufficiency of an adverse finding on which he did not have the burden of proof at trial, he must demonstrate there is no evidence to support the adverse finding. *Id.* When reviewing the

record, we determine whether any evidence supports the challenged finding. *Id*. If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails. *Id.*; *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (more than a scintilla of evidence exists when evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions"). When a party attacks the legal sufficiency of an adverse finding on an issue on which he has the burden of proof, he must demonstrate that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam).

When an appellant challenges the factual sufficiency of the evidence on an issue, we consider all the evidence supporting and contradicting the finding. *Sheetz*, 503 S.W.3d at 502. We set aside the finding for factual insufficiency only if the finding is so contrary to the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). The trial court, as factfinder, is the sole judge of the credibility of the witnesses. *Sheetz*, 503 S.W.3d at 502. As long as the evidence falls "within the zone of reasonable disagreement," we will not substitute our judgment for that of the fact-finder. *Id.*

We review de novo a trial court's conclusions of law. *See Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.). We are not bound by the trial court's legal conclusions, but conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Sheetz*, 503 S.W.3d at 502. Incorrect conclusions of law will not require reversal if the controlling findings of fact will support a correct legal theory. *Id.* Moreover, conclusions of law may not be reversed unless they are erroneous as a matter of law. *Id.*

Expert testimony is admissible if (1) the expert is qualified, and (2) the testimony is relevant and based on a reliable foundation. *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d

797, 800 (Tex. 2006). The trial court's determination that these requirements are met is reviewed for abuse of discretion. *Id.* A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Id.*

## APPLICABLE LAW

"'The elements of a breach-of-fiduciary-duty claim are: (1) a fiduciary relationship existed between the plaintiff and defendant; (2) the defendant breached its fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in injury to the plaintiff or benefit to the defendant.'" *Neese v. Lyon*, 479 S.W.3d 368, 386–87 (Tex. App.—Dallas 2015, no pet.) (quoting *Anderton v. Cawley,* 378 S.W.3d 38, 51 (Tex. App.—Dallas 2012, no pet.)). An attorney owes his client a fiduciary duty as a matter of law. *Id.* at 387.

In the attorney-client context, a fiduciary duty claim focuses on whether the attorney's conduct involved his integrity and fidelity, and whether the attorney obtained an improper benefit from representing the client. *Id.* An attorney commits a fiduciary breach when he benefits improperly from the attorney-client relationship by, among other things, subordinating his client's interests to his own, retaining the client's funds, engaging in self-dealing, improperly using client confidences, failing to disclose conflicts of interest, or making misrepresentations to achieve those ends. *Id.* An attorney also owes a client a duty to inform the client of matters material to and within the scope of the representation. *Id.* Contracts between attorneys and their clients negotiated during the existence of the attorney-client relationship are closely scrutinized. *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 699 (Tex. 2000) (citing *Archer v. Griffith,* 390 S.W.2d 735, 739 (Tex.1964)). Because the relationship is fiduciary in nature, there is a presumption of unfairness or invalidity attaching to such contracts. *Id.*

To prevail on a fraud claim, a plaintiff must show: (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it

recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018). The fourth element has two requirements: the plaintiff must show that he actually relied on the defendant's representation and, also, that such reliance was justifiable. *Id.*

### DISCUSSION

Although his issues on appeal challenge the sufficiency of the evidence to support the trial court's findings and conclusions regarding the change in Henderson's billing from an hourly rate to a flat fee, the crux of Wilson's complaint is Henderson's failure to achieve an early—and comparatively small—settlement of the underlying litigation. He argues that Henderson "intentionally prolong[ed] litigation, inflate[d] billings, [and] prevent[ed] reasonable and expeditious settlement[ ]" of the SEC's claims, in violation of his fiduciary duties to Wilson.

At the conclusion of trial, the trial court identified four questions to be resolved regarding Wilson's claims for breach of fiduciary duty and fraud:

1. Whether there was evidence to support the fees Henderson charged between May 13, 2010, after Wilson's appearance before the SEC,[2] and April 19, 2011, when the SEC filed suit;

2. Whether Henderson's September 5, 2011 email modifying the fee structure from an hourly rate to a flat fee was a breach of fiduciary duty;

3. Even if changing the fee structure was not a breach of fiduciary duty, whether the $23,500.00 flat fee was an overcharge; and

4. Whether Henderson committed fraud by changing the parties' fee arrangement from an hourly rate to a flat fee.

---

[2] During the SEC's pre-suit investigation, Wilson appeared before the SEC, represented by Henderson. At trial, the parties disputed whether Wilson's appearance could be called a "deposition" or not, but this dispute is not material to any of the issues in this appeal.

The trial court found in Wilson's favor on the first of these questions, and rendered judgment that Wilson "is entitled to disgorgement of fees for charges incurred from Defendant Henderson from 5/13/2010 to 4/19/2011 in the amount of $10,000.00 plus judgment interest of $3,787.97." On the remaining three questions, the trial court found Henderson's explanation of his reasons for changing the fee structure to be credible. The trial court's finding of fact 6 provides:

> Plaintiff acquiesced to Defendant's change of the fee arrangement from hourly to a flat fee. There is no or insufficient evidence of any objection by Plaintiff to the change in the fee arrangement. Moreover, the change to a flat fee was, more likely than not, for the benefit of Plaintiff.

Conclusion of law 15 provides that Henderson met his "burden to demonstrate that he did not breach his fiduciary duty in changing the fee arrangement between the Parties from hourly to a flat fee."

Wilson's seven issues all arise from his complaints about Henderson's fees. He complains of lack of documentation to support the fees charged (Issues 5, 6, and 7), as well as breaches of fiduciary duty and fraud for changing from an hourly rate to a flat fee (Issues 1 through 4). Although the record is not entirely clear, it appears that Wilson contends he reached a settlement with the SEC after a mediation on September 1, 2011, but Henderson then advised him to "bypass" settlement. Wilson alleges that Henderson so advised him for the sole purpose of generating more fees, citing Henderson's imposition of the new flat fee immediately after the mediation.

Wilson testified that the day after the mediation, he met, by himself, with the two SEC representatives who had attended the mediation. He testified that "I went to settle, I went there, I signed" in front of the two representatives, without Henderson or any other attorney on his behalf present.[3] The representatives did not give him a copy of the document he signed. Although he relies on a "mediation attendance roster" showing his attendance at the September 1 mediation,

---

[3] In his reply brief, Wilson contends that he and the SEC agreed that he would pay a $65,000 penalty and be enjoined from marketing penny stocks for five years. His supporting record cite is to the testimony of Henderson's expert witness that a settlement "did occur" in September. Only Wilson, however, testified to the alleged terms.

the roster shows that Henderson and others also were present, and there is no record from the following day. The roster also contains an agreement to mediate, but the agreement does not include any settlement terms among any of the parties.

Although Henderson agreed the mediation took place, he testified that no settlement of the SEC's claims against Wilson resulted. He explained his reasoning for changing from the hourly rate at that time:

> As far as the modification of the fee. The modification of the fee I determined because at the point of mediation we had no agreement, we had no settlements, we might have to go to trial or it will take a long time to settle. And what I had proposed was an hourly—dividing 23,500 by $250 and see what it was—and to estimate what it would take to go through trial and/or settlement at or around the time that we had the hearing on the disgorgement and civil money penalty.

> Mr. Wilson was very, very, very strapped for funds. And based on my experience and knowing that a settlement process or litigation could take up to a year or two, it would be far, far more expensive for Mr. Wilson and his family who were in dire straits at that point in time.

> . . . .

> [I]n my best judgment, . . . the modification was in his best interest so that no matter how long and how many hours I worked, he would be—that would be his maximum exposure in the middle of an SEC case where we had a lot of work to do either to settle or to go to trial.

> That number was arrived at and put in the form of an invoice for his protection. . . . It's for his protection so he doesn't have to worry about any more legal fees on this case given his current circumstances. That, to me, was part of fulfilling my obligation as a fiduciary to look out for the best interest of Mr. Wilson to allow him to budget, put down final payment to Henderson. And as I've testified, it was approximately 15 months of negotiations and motions that were covered by the $23,500. . . . It would have been in my opinion more harmful to Mr. Wilson to continue at a running $250 an hour when we did not know how long [before] this was going to come to a conclusion.

Henderson also presented evidence of the work he performed during the course of the representation. He testified that the SEC's charges against Wilson were serious, including allegations that Wilson participated in a stock promotion campaign involving materially false and misleading statements and material omissions. The federal court's memorandum opinion and order

–8–

was admitted into evidence at trial, and reflects that Wilson "orchestrated a blast fax campaign" during a six-month period, sending faxes "to thousands of people at once" that contained false and misleading statements about a corporation's stock. Henderson testified that the SEC froze the defendants' bank accounts, and part of his work on Wilson's behalf included working with the SEC and Wilson's bank to restore Wilson's access to an account that had been frozen in error. Henderson negotiated with the SEC, emphasizing that Wilson did not own any of the stock in question, and attempted to determine the likelihood that the SEC would pursue criminal charges against Wilson. He prepared Wilson's response to a motion for summary judgment filed by the SEC. He attended the court-ordered mediation, although he was not optimistic about it resulting in a settlement because he did not believe the persons attending on the SEC's behalf had final authority to bind the SEC to any agreement reached. Henderson also testified that he charged Wilson $250 per hour until he proposed the change to the flat fee. There is no evidence that Henderson knowingly made a false representation about his fee in 2010 when he began representing Wilson at an hourly rate.

The trial court heard the testimony of all of the witnesses and was the sole judge of their credibility. *Shaw v. Cty. of Dallas,* 251 S.W.3d 165, 169 (Tex. App.—Dallas 2008, pet. denied). The trial court may believe one witness and disbelieve others and may resolve inconsistencies in a witness's testimony. *Id.* An appellate court may not substitute its judgment for that of the factfinder even if there is conflicting evidence that would support a different conclusion. *See In re Shipman*, 540 S.W.3d 562, 565 (Tex. 2018) (per curiam) (orig. proceeding) ("Appellate courts may not substitute their judgment for the trial court's determination of factual matters committed to the trial court's discretion."). Here, the trial court's findings of fact that (1) Wilson did not object to the change in the fee arrangement, (2) the change to a flat fee was for Wilson's benefit, and (3) Henderson did not knowingly or recklessly make "his statement regarding having an hourly

fee arrangement" are supported by the evidence in the record. We conclude there was legally and factually sufficient evidence to support the trial court's findings of fact and conclusions of law regarding the change in the fee arrangement, and we decide Wilson's first, third, and fourth issues against him.

In his second issue, Wilson asserts that "[t]he trial court erred in ignoring substantial evidence of Appellee's breach of fiduciary duty for charging $10,000 on April 28, 2010." Wilson contends that Henderson did not provide a written fee agreement or billing for this fee, and Henderson's testimony that the fee was a "one-time 'true' non-refundable retainer where no legal work was provided" was false. The record reflects that Henderson charged the fee after the SEC filed suit. Henderson offered his own testimony and the testimony of his expert that a fee of $10,000 was reasonable to retain a lawyer with expertise in defending SEC suits, and the fee precluded him from representing other individuals in the same matter as well as from taking on other work. As Wilson points out, the failure of a lawyer to explain how a fee is to be calculated may weigh in favor of a conclusion that the fee is unconscionable. *See Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 565 (Tex. 2006) (citing TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04 cmt. 8). But the trial court was the sole judge of the credibility of the evidence, and Henderson offered evidence from which the trial court could find and conclude that Henderson did not breach his fiduciary duty in charging the retainer fee. *See Sheetz*, 503 S.W.3d at 502. We decide Wilson's second issue against him.

Although not included in his list of issues presented, Wilson also argues that the trial court erred in admitting the testimony of Daniel Kirschbaum, Henderson's expert witness, that Henderson's fees were reasonable. When Henderson called Kirschbaum to testify at trial, Wilson objected that Kirschbaum's testimony did "not meet any of the *Daubert/Robinson* factors," "fails the *Gammill* test," and improperly relied on Henderson's testimony. He also objected that

Kirschbaum's affidavit lacked specificity, although as the trial court noted, he had agreed to its admission into evidence. The court explained to Wilson, "if you have an objection that [a] certain opinion offered by him lacks foundation as those opinions are being elicited, the Court will receive your objection and rule upon it." Wilson, however, did not make any such objection to Kirschbaum's direct testimony. Consequently, we construe Wilson's argument on appeal as a no-evidence complaint. *See Reisler v. Reisler*, 439 S.W.3d 615, 623 (Tex. App.—Dallas 2014, no pet.) (party who did not object to expert's testimony at trial may argue on appeal that expert's testimony constitutes no evidence and is mere conclusion); *see also* TEX. R. APP. P. 33.1(d) (in civil nonjury case, complaint regarding legal or factual sufficiency of evidence may be made for first time on appeal).

Kirschbaum, a lawyer, testified that his primary area of practice is securities law. After obtaining his law degree in 1968, he worked on the enforcement staff of the SEC and then managed the SEC's Houston office before entering private practice in 1979. He testified that he was familiar with the type of case the SEC brought against Wilson and his codefendants. He discussed the type of work an attorney would undertake in representing a client in a similar case. He explained the materials he had reviewed, and opined that Henderson's fee was "an absolute bargain" under the circumstances and in comparison to similar cases he had handled. We conclude Kirschbaum's testimony provided some evidence to support his opinions. *Cf. Reisler*, 439 S.W.3d at 623 (expert provided basis for opinion; further complaints about methodology were waived by failure to object at trial).

The trial court, as factfinder, was entitled to make credibility determinations and weigh the expert's testimony. *Duke Realty Ltd. P'ship v. Harris Cnty. Appraisal Dist.*, No. 14-15-00543-CV, 2016 WL 3574666, at *3 (Tex. App.—Houston [14th Dist.] June 30, 2016, no pet.) (mem. op.). We conclude the evidence was sufficient to support Kirschbaum's opinion that Henderson's fee

was reasonable, and it was within the trial court's discretion to consider it. *See Reisler*, 439 S.W.3d at 623. We decide Wilson's complaint about the admission of Kirschbaum's testimony against him.

In his fifth, sixth, and seventh issues Wilson argues the trial court "ignored substantial evidence" that Henderson breached his fiduciary duty by failing to provide billings, a written fee agreement, and Wilson's client files. Wilson relies on several federal court decisions addressing applications for attorney's fee awards under federal law, an issue not presented here. *See, e.g., Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761 (5th Cir. 1996) (considering attorney's fee application under federal civil rights statute). Henderson responds that he offered evidence that Wilson did not request his file until November 2016, five years after the flat fee arrangement began, and after Henderson had replaced the computer that held Wilson's file. He also offered evidence that in the course of the representation, he copied Wilson on all correspondence with the SEC, and the pleadings and other filings made in the SEC's lawsuit against Wilson were publicly available. He testified that the flat fee arrangement was for the remainder of the representation so that hourly billing and detailed invoices were not required.

Considering the entire record, we conclude there was legally and factually sufficient evidence from which the trial court could find and conclude that Henderson did not improperly benefit from his attorney-client relationship with Wilson, engage in self-dealing, or otherwise breach his fiduciary duties to Wilson. *See Neese*, 479 S.W.3d at 387. We decide Wilson's fifth, sixth, and seventh issues against him.

## CONCLUSION

We affirm the trial court's judgment.

/Leslie Osborne/
LESLIE OSBORNE
JUSTICE

180714F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ROBERT L. WILSON, Appellant

No. 05-18-00714-CV       V.

J. RANDLE HENDERSON, Appellee

On Appeal from the 116th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-16-15162.
Opinion delivered by Justice Osborne;
Justices Myers and Nowell, participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee J. Randle Henderson recover his costs of this appeal from appellant Robert L. Wilson.

Judgment entered September 24, 2019